[Cite as *State v. Hanners*, 2022-Ohio-4114.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29375 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-3626 |
| | : | |
| SHAWN A. HANNERS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of November, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 & ALISSA SCHRINER, Atty. Reg. No. 0089388, Assistant Prosecuting Attorneys, City of Dayton Prosecutor's Office, Appellate Division, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

V. GAYLE MILLER, Atty. Reg. No. 0091528, 120 West Second Street, Suite 320, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Shawn A. Hanners appeals from his conviction following a jury trial for one count of menacing, a misdemeanor of the fourth degree. For the reasons that follow, the judgment of the trial court will be affirmed.

## I. Procedural History and Facts

{¶ 2} On November 24, 2020, Hanners was charged by way of complaint in the Dayton Municipal Court with one count of aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree, and one count of menacing in violation of R.C. 2903.22, a misdemeanor of the second degree. The charges arose from an incident that was alleged to have occurred on November 21, 2020, in the City of Dayton.

{¶ 3} Hanners entered a plea of not guilty at his arraignment and was appointed counsel. Jessica Musselman was charged as a co-defendant as a result of the same incident for similar offenses. Consequently, the State filed a motion to consolidate the two cases for trial, which was granted. The case proceeded to a joint jury trial on October 20-21, 2021. Dayton Municipal Court Magistrate Colette Moorman presided over the trial as acting judge.

{¶ 4} Duiene Stanfield testified first for the State. She stated that on the evening of November 21, 2020, she was in a car with her husband, Christopher Stanfield, near the intersection of Linden and Smithville heading toward their home.[1] While at the stoplight, she observed four unknown black teenagers in the parking lot of a gas station, which was on one of the corners of the intersection. She also saw two white males, one of whom was later identified as Hanners, and a white female, later identified as

[1] For ease of discussion, we will refer to the Stanfields by their first names throughout this opinion.

Musselman, in a yard behind a white house that sat behind the gas station. Duiene saw the teenagers and the adults yelling at each other. Although Duiene and Christopher turned at the light to head home, they decided to turn around and go back to intervene. When Duiene and Christopher returned to the gas station parking lot, Christopher got out of the car and told Duiene to call 911, which she did. Duiene observed the two white males throwing things (chairs, lighter fluid, and bricks) and observed Musselman with a butcher knife. While the teenagers were standing in the parking lot, Hanners hit one of them in the chest with a brick, resulting in some bleeding. Christopher got the teenagers further away from the yard to talk to them and to tend to the teenager who was injured.

{¶ 5} While Duiene was standing just outside her car on the phone with 911, Musselman began screaming at Duiene. Musselman yelled profanities at Duiene, told her to stay out of their business, and stated "I'll kill you b****." Trial Tr. 56. Additionally, while holding the butcher knife above her head and moving it side to side, Musselman repeatedly told Duiene "I see you," that she could see her car, and that she could see her license plate. They did not know each other prior to their interaction that evening.

{¶ 6} Although the unknown white male had gone into the house, he returned outside with a large white pit bull. Hanners, who was holding the dog's chain, let the chain go and told the dog to "get the kids." Duiene testified she was scared and concerned for her husband's safety, because he was standing near the kids when the dog was let loose. Meanwhile, Musselman continued to yell derogatory insults at Duiene and again screamed that she would kill her even after the police arrived at the scene. *Id.* at 58.

{¶ 7} According to Duiene, while police were at the scene, Hanners put the dog back inside the house and then came outside and threw a chair. During that time, Hanners was screaming "I don't give a f***. I'll f*** all of you up." *Id.* at 59. Duiene stated that the threats from Hanners scared her and that she was still scared while testifying at court. Duiene explained that she was very afraid because even after the police arrived, she had been scared that Hanners and Musselman were going to charge her and that she would get hit. *Id.* at 60.

{¶ 8} Christopher Stanfield also testified for the State. He stated that he and Duiene were driving home and saw the group of kids and the two adults "jawing" at each other, and they all appeared angry. Based on what he saw, he and Duiene turned their car around and parked in the gas station parking lot to intervene. Once they parked their car, they could hear the teenagers and the adult males screaming back and forth. Christopher got out of the car and yelled at the kids to get back and told his wife to call 911. Two of the kids came back toward Christopher, but the other two stayed up by the backyard and continued yelling with the adults. According to Christopher, one of the male adults threw a rock and hit one of the kids in the chest. At that point, Christopher was scared for his own safety. Christopher also observed Musselman outside with a knife, screaming and yelling. Christopher heard Musselman threaten to kill his wife. Although Christopher saw a chair get thrown, he did not identify who threw the chair. He also observed the dog outside but was unaware of how it got outside.

{¶ 9} The last witness for the State was Dayton Police Officer Christopher White. White testified that he had responded to the 911 call around 4:30 p.m. to the gas station

on Smithville Road.   When he arrived, he observed the parties yelling at each other, and they were all very agitated.   Although he did not recall specifically what anyone had been yelling, he did recall that Hanners had yelled at him to leave the property and had stated that they did not want police help.   White testified that both Musselman and Hanners were very unpleasant and angry.   White observed an abrasion on the side juvenile who had been injured.

{¶ 10} At the conclusion of the State's case, Hanners made a Crim.R. 29 motion for acquittal, which was overruled.   He also requested a jury instruction for the lesser included offense of disorderly conduct, in violation of R.C. 2917.11(A)(1), a minor misdemeanor.   The trial court denied Hanners' requested instruction.

{¶ 11} Hanners elected not to testify, but Musselman testified on her own behalf. Musselman claimed that she had not seen the Stanfields until after the police arrived and that she had not been paying any attention to them because her focus was on the juveniles.   Musselman indicated she was terrified for herself and her child's life, who remained inside the house.   She did not see any weapons on the Stanfields, and they never approached her property.   Musselman denied doing anything Duiene testified to during trial, although she later admitted that she was outraged and yelled profanities during the incident.

{¶ 12} The jury found Hanners not guilty of aggravated menacing but guilty of menacing.   After a presentence investigation report was completed, Hanners was sentenced to 30 days in jail, all of which was suspended, was ordered to: complete six months of community control under basic supervision, complete "PAC" and anger

management, and pay a fine of $100 and court costs. That same day, a "Final Appealable Entry & Order" was filed reflecting the above-imposed sentence.

{¶ 13} Hanners filed a request to stay his sentence for purposes of appeal, which the trial court granted. Hanners then filed a timely notice of appeal.

## II. No Consent Needed for Jury Trial

{¶ 14} In his first assignment of error, Hanners alleges that the trial court erred in failing to obtain his written consent before proceeding to a jury trial before a magistrate. However, because the record reflects that he was tried before an acting judge, there was no requirement to obtain consent, and his argument lacks merit.

{¶ 15} Although Hanners couched his argument in terms of Civ.R. 53(C)(1)(c), Crim.R. 19(C)(1)(h) governs criminal trials presided over by magistrates in municipal court. In criminal cases, magistrates are authorized to "conduct the trial of any misdemeanor case that will not be tried to a jury. If the offense charged is an offense for which imprisonment is a possible penalty, the matter may be referred only with unanimous consent of the parties in writing or on the record in open court." Crim.R. 19(C)(1)(h).

{¶ 16} Meanwhile, R.C. 1901.121 addresses the appointment of an acting judge in a municipal court. R.C. 1901.121(C) provides that when there is a vacancy in a municipal court with three or more judges (such as the Dayton Municipal Court), "the court's presiding judge has the option to either appoint an appropriate substitute as 'acting judge' or to request that the Supreme Court of Ohio assign a sitting judge of another court or a retired judge to temporarily serve as an 'assigned judge.' " *State v. Armstrong-Carter*, 2d Dist. Montgomery Nos. 28571 and 28576, 2021-Ohio-1110, ¶ 65. Pursuant

to that statute, if a judge of the municipal court is incapacitated, unavailable, or temporarily absent, the presiding judge may appoint a qualified substitute if no other judge of the court is available to perform the duties of the judge. R.C. 1901.121(C)(1). The appointee shall be designated as "acting judge" and "shall have the jurisdiction and adjudicatory powers conferred upon the judge of the municipal court." R.C. 1901.121(C)(1) and (E).

{¶ 17} In this case, Magistrate Moorman was appointed by the presiding judge to act as acting judge of the Dayton Municipal Court on October 20, 2021, October 21, 2021, and January 5, 2022. Collectively, the dates covered both the jury trial, the sentencing hearing, and the sentencing entry. The entries appointing Moorman as acting judge further indicated that the appointment of an acting judge was necessary for those dates due to the absence of Judge Henderson. Because the jury trial was conducted by Moorman in her capacity as acting judge and not in her capacity as magistrate, there was no need to obtain unanimous consent of the parties to have her preside over the trial. As such, Hanners' first assignment of error is overruled.

### III. Motion for Mistrial

{¶ 18} Hanners' second assignment of error contends that the trial court erred in refusing to grant a mistrial following the prosecutor's improper statement during her closing argument. Although the prosecutor's statement was improper, it did not prejudicially affect Hanners' substantial right to a fair trial due to the swift corrective measures taken by the trial court.

{¶ 19} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected

substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984), citing *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir.1981). "Prosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." (Citation omitted.) *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149. "Prosecutorial misconduct should only result in a mistrial if, after a curative instruction, the effect of the comments would still result in a miscarriage of justice." *State v. Ward*, 2d Dist. Montgomery No. 18211, 2001 WL 220244, *4 (Mar. 2, 2001), citing *State v. Gardner*, 127 Ohio App.3d 538, 540, 713 N.E.2d 473 (5th Dist.1998). "The touchstone * * * is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 20} The grant or denial of a motion for a mistrial rests in a trial court's sound discretion and should not be disturbed on appeal absent an abuse of that discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). To establish an abuse of discretion for failing to grant a mistrial, a defendant must demonstrate material prejudice. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). Reviewing courts grant "great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *State v. Glover*, 35 Ohio

St.3d 18, 19, 517 N.E.2d 900 (1988).

{¶ 21} Hanners' motion for a mistrial was based on the prosecutor's statement during closing argument that "Miss Stanfield also told you about how Shawn Hanners threatened to kill her." Trial Tr. 140. Hanners immediately objected. The jury left the courtroom, and the parties replayed the testimony of Duiene. A review of the testimony revealed that Duiene testified that Hanners stated "I'll f*** you all up" and did not state "I will kill you." *Id.* at 141. Hanners immediately requested a mistrial. The trial court denied the motion for a mistrial and provided the following additional instructions upon the jury's return to the courtroom:

> The Court: * * * To members of the jury, final arguments of counsel are an opportunity for each side's attorney to summarize the evidence and argue their respective positions. They are not evidence and the side with the burden of proof will be the state. The attorney[s] have to argue the facts that are in evidence and the court is going to tell you we went back to play a portion of the tape to make sure that I had heard everything correctly. There is no testimony on the record that the defendant, Mr. Hanners, said the words […]
>
> [Defense attorney]: That I will kill you[.]
>
> The Court: That I will [sic] you. The prosecutor has misstated that. That is not in evidence and it was very improper for her to say so. I'm going to ask you to disregard that. It is not in the evidence. It's not in the record. You, as the jury, decides what facts you believe and you want to find to be

credible, the witnesses to be credible, and what facts you want to ugh commenting recollection [sic] with each other believe what you heard. That is not going to be one of them. It's gonna be stricken from the record and there is no allegation there that he said those words. I'm going to caution the prosecutor to not misstate what was said and I will allow you to continue.

*Id.* at 142-143. Thereafter, the prosecutor apologized and continued with closing arguments.

{¶ 22} After reviewing the record, we conclude that the prosecutor improperly attributed the statement to Hanners, which was prejudicial. Although Duiene Stanfield did not testify that Hanners made the statement, she did testify that Hanners' co-defendant, Musselman, made the statement multiple times. Christopher also testified that he heard Musselman threaten to kill Duiene. Thus, the statement was in evidence but, unfortunately, the prosecutor attributed it to the wrong defendant.

{¶ 23} Even though we find the statement by the prosecutor to have been improper and prejudicial, we must still determine whether the remark was so prejudicial as to deny Hanners a fair trial. We are unpersuaded that the prosecutor's misstatement so infected Hanners' trial with unfairness that his conviction violated his due process rights. Notably, the court's instructions immediately following the prosecutor's misstatement mitigated any harm caused by it. "Curative instructions are generally viewed as sufficient to remedy the risk of undue prejudice." *State v. Gray,* 2d Dist. Darke No. 2019-CA-7, 2020-Ohio-1402, ¶ 48. The jury was informed prior to closing arguments and again in the jury instructions that the arguments of counsel were not to be considered as evidence. "It is

presumed that the jury obeys the instructions of the trial court." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 54. While not all misconduct can be cured by an instruction, in this case, not only did the trial court instruct the jury to disregard the statement, but it also corrected the statement, ordered that the misstatement be stricken from the record, and admonished the prosecutor in front of the jury immediately following the misconduct. The significant steps taken in this case by the trial court minimized any prejudice caused by the prosecutor's isolated misstatement. Therefore, the trial court did not abuse its discretion in overruling Hanners' request for a mistrial. His second assignment of error is overruled.

### IV. Jury Instructions

{¶ 24} In his final assignment of error, Hanners claims that the trial court erred when it refused to instruct the jury on the lesser included offense of disorderly conduct. Although Hanners requested the instruction, the trial court found that the evidence did not warrant giving it. We agree with the trial court.

{¶ 25} Both Crim.R. 31(C) and R.C. 2945.74 provide that a jury may find a defendant not guilty of the offense charged but guilty of a lesser included offense. Deciding whether a lesser included offense jury instruction is warranted involves a two-step analysis. *State v. Deanda,* 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6. The first step is a purely legal question wherein the court must determine whether one offense constitutes a lesser included offense of the charged offense. *Id.*, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). The second step requires the court to considers the evidence presented in the particular case and determine whether

"a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense." *Id.* at ¶ 6, quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. Thus, "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. When making that determination, "the trial court must view the evidence in the light most favorable to the defendant." *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37.

{¶ 26} "A trial court has broad discretion to decide how to fashion jury instructions, but it must 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.' " *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "A defendant is only entitled to have his proposed jury instructions given when they are correct statements of the law, pertinent to the evidence in the record or to material issues, and are timely presented and not already included in the substance of the jury charge." *State v. Elliott*, 2d Dist. Montgomery No. 26104, 2014-Ohio-4958, ¶ 23, citing *State v. Guster*, 66 Ohio St.2d 266, 269, 421 N.E.2d 157 (1981). "When reviewing the trial court's jury instructions, the proper standard of review is whether the trial court's decision to give or exclude a particular jury instruction was an abuse of discretion under the facts and

circumstances of the case." (Citation omitted.) *State v. Fair*, 2d Dist. Montgomery No. 24388, 2011-Ohio-4454, ¶ 65. An "abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶ 27} In this case, Hanners was charged and convicted of menacing, in violation of R.C. 2903.22(A), a misdemeanor of the fourth degree.[2] That statute provides that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, * * * or a member of the other person's immediate family." R.C. 2903.22(A).

{¶ 28} Hanners requested a jury instruction for disorderly conduct, in violation of R.C. 2917.11(A)(1), a minor misdemeanor. R.C. 2917.11(A)(1) provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior." We first consider whether disorderly conduct under R.C. 2917.11(A)(1) constitutes a lesser included offense of menacing.

{¶ 29} The Ohio Supreme Court has articulated a three-pronged test to determine whether a criminal offense is a lesser included offense of another. "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the

---

[2] We acknowledge that Hanners was also charged with aggravated menacing, but considering he was found not guilty of that charge, we find the argument moot as to that offense.

greater offense is not required to prove the commission of the lesser offense." *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph three of the syllabus. Using this analysis, we find that disorderly conduct, as specified in R.C. 2917.11(A)(1), is a lesser included offense to menacing.

{¶ 30} First, disorderly conduct is a minor misdemeanor, which carries a lesser penalty than menacing, a fourth-degree misdemeanor. *See, generally,* R.C. 2929.27 and R.C. 2929.28. Second, menacing contains the element of threatening physical harm, which cannot be committed without at the same time causing annoyance or alarm to the victim. *See State v. Shumaker*, 2d Dist. Darke No. 1332, 1994 WL 47676, *7 (Feb. 18, 1994) (finding that threatening serious physical harm under an aggravated menacing charge cannot be committed without at the same time causing annoyance or alarm to the victim by threatening harm). Third, "the greater mental state of knowingly is required for menacing, but not for disorderly conduct and for menacing, the offender must cause another to believe that the offender will cause physical harm, while disorderly conduct requires only that inconvenience, annoyance or alarm be caused." *State v. Ozias*, 12th Dist. Butler No. CA2003-04-102, 2003-Ohio-5431, ¶ 14.

{¶ 31} Nonetheless, a trial court is not always required to instruct the jury on a lesser included offense even if the elements of the offense would be met. Rather, it is only required when "the evidence presented at trial would reasonably support an acquittal on the crime charged and a conviction on the lesser included offense." *State v. Allen*, 73 Ohio St. 3d 626, 637, 653 N.E.2d 675 (1995). Thus, we must consider whether the jury could have reasonably acquitted Hanners of menacing but convicted him of disorderly

conduct.

{¶ 32} We conclude that the evidence presented at trial cannot reasonably support a conviction for disorderly conduct under R.C. 2917.11(A)(1) and an acquittal on menacing. A conviction for disorderly conduct and an acquittal for menacing would have required the jury to find that Hanners recklessly caused inconvenience, annoyance, or alarm to Duiene by engaging in fighting, in threatening harm to Duiene or her property, or acting in a violent or turbulent behavior, but that Hanners did not knowingly cause Duiene to believe that Hanners would cause her physical harm. The culpable mental states for "knowingly" and "recklessly" are defined in R.C. 2901.22(B) and (C), respectively, as follows:

> (B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

> (C) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances

when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 33} As it relates to Hanners' conduct and statements, the jury was only presented with one version of events – that testified to by the Stanfields. Considering the conduct and statements of Hanners during the entirety of the incident, the evidence presented demonstrated that Hanners acted knowingly, not recklessly. Thus, if the jury believed the Stanfields, Hanners was guilty of menacing.

{¶ 34} The incident occurred around 4:30 p.m. in broad daylight. Duiene testified she was approximately 20 feet away from Hanners during the incident and was located near her husband and the juveniles in the gas station parking lot. Hanners was observed by both the Stanfields throwing chairs and lighter fluid, as well as a brick/rock that struck one of the teenagers in the chest and resulted in an injury. Additionally, Hanners released a large pit bull and told the dog to "get the kids." The 911 call was consistent with Duiene's testimony that chairs, lighter fluid, and bricks were being thrown and that the dog was sent out to get the kids. Duiene testified she was scared for herself and concerned for her husband's safety as well. Significantly, while police were on the scene, Hanners threw a chair and screamed "I don't give a f***. I'll f*** all of you up." Trial Tr. 59. This conduct occurred after having already injured one of the juveniles by throwing other objects and telling police he did not need their help. Duiene stated that the threats from Hanners scared her and she was afraid that he was going to charge toward her and hit her. *Id.* at 60.

{¶ 35} Based on the facts in evidence in this case, a reasonable jury would not have acquitted Hanners of the menacing charge but convicted him of disorderly conduct. Accordingly, we conclude that the trial court did not abuse its discretion by refusing to give an instruction on disorderly conduct. We overrule Hanners' third assignment of error.

## V. Conclusion

{¶ 36} Having overruled all of Hanners' assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.


Copies sent to:

Stephanie L. Cook
Alissa Schriner
V. Gayle Miller
Hon. Colette Moorman, Acting Judge