[Cite as *State v. Gilbreath*, 2011-Ohio-2310.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

STATE OF OHIO                                :

                              :       Appellate Case No. 2010-CA-31

       Plaintiff-Appellee             :

                              :       Trial Court Case No. 09-CR-1014

v.                                          :

                              :

RICHARD GILBREATH                           :       (Criminal Appeal from
                              :        Common Pleas Court)

       Defendant-Appellant        :

                              :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 13th day of May, 2011.

. . . . . . . . . . .

ANDREW R. PICEK, Atty. Reg. #0082121, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Post Office Box 1608, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

KATHRYN L. BOWLING, Atty. Reg. #0084442, Bowling Law Office, LLC, 111 West First Street, Suite 518, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}  Richard Gilbreath appeals from his conviction and sentence on one count of

burglary in violation of R.C. 2911.12(A)(1).

{¶ 2}  In his sole assignment of error, Gilbreath challenges the legal sufficiency and

manifest weight of the evidence to support his conviction.

{¶ 3} The record reflects that Gilbreath's case proceeded to a jury trial in March 2010. The State presented three witnesses. The first witness was police officer Jerrod Osborne. He testified about responding to a burglary-in-progress call in the early morning hours of November 29, 2009. Upon arriving at the scene, a residence, Osborne went inside and saw Gilbreath being held against a wall by another man, later identified as Dwight Weber. The officer proceeded to handcuff Gilbreath, who was visibly intoxicated.

{¶ 4} The State's second witness was Weber, who identified himself as the owner of the house where the incident occurred. Weber testified that he was awakened around 3:00 a.m. by his son-in-law, David Jones, who was yelling about someone being in the house. Weber arose and encountered Gilbreath in the living room. Weber testified that he grabbed Gilbreath and held him against the wall. Although Gilbreath did not resist, he said, "Just let me go, let me go, I'm cool." On cross examination, Weber testified that he never found any signs of forced entry into his home. He was uncertain, however, whether he had locked his back door that night. Weber also testified that he had various tools in the area where he encountered Gilbreath.

{¶ 5} The State's final witness was Jones, who testified that he also was living in the house on the night in question. He was awakened by the sound of his dogs barking. After grabbing a flashlight and exiting his bedroom, he saw Gilbreath inside the house. Jones confronted Gilbreath and asked what he was doing. Gilbreath did not respond verbally but placed his hands in his pockets and moved toward the front door. Jones testified that Weber intercepted Gilbreath and held him against a wall until police arrived. When Jones first saw

him inside the house, Gilbreath was "playing with some stuff on the end table." On cross examination, Jones testified that the end table "had some stuff on it," including keys, "what-knots," and a ratchet. But Jones never found anything missing.

{¶ 6} Following Jones's testimony, the State rested. The trial court then overruled a Crim.R. 29 motion. Gilbreath presented no defense. The jury found him guilty of burglary, and the trial court imposed a four-year prison sentence. This appeal followed.

{¶ 7} As set forth above, Gilbreath contends his conviction is based on legally insufficient evidence and is against the weight of the evidence. Although he raises those issues separately, he has briefed and argued them together. His argument is that the State failed to prove each element of the burglary charge.

{¶ 8} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Hawn* (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶ 9} Our analysis is somewhat different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all

reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, (1997), 78 Ohio St.3d 380, 387 (citations omitted). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 10} Having reviewed the record, we conclude that Gilbreath's conviction is based on legally sufficient evidence and is not against the weight of the evidence. Gilbreath was convicted of violating R.C. 2911.12(A)(1), which provides:

{¶ 11} "(A) No person, by force, stealth, or deception, shall do any of the following:

{¶ 12} "(1) Trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense."

{¶ 13} Gilbreath concedes that he trespassed in an occupied structure when someone else was present.[1] He contends, however, that the State failed to prove he entered the home by force, stealth, or deception. He also claims the State failed to prove that he trespassed with the intent to commit any criminal offense. We disagree.

{¶ 14} The jury reasonably could have inferred that Gilbreath entered the home by stealth even if the entry door was unlocked or open. This court has defined stealth as "'a

---

[1] Parenthetically, we note that the phrase "occupied structure" is statutorily defined. It describes particular types of structures without necessarily requiring anyone to be present at a given time. See R.C. 2911.12(B) and R.C. 2909.01(C). Therefore, it is not redundant to allege that Gilbreath trespassed in an occupied structure when someone else was present.

secret, sly, or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *In re Markunes* (Sept. 20, 1996), Montgomery App. Nos. 15601, 15617 (citations omitted). In the present case, Weber and Jones testified that Gilbreath did not have permission to be in their home. The fact that Gilbreath entered under the darkness of night when the occupants were likely to be asleep supports an inference of stealth. This inference is strengthened by the fact that Gilbreath made little noise. Neither Weber nor Jones was awakened by any sound they heard him make. Instead, Jones heard his dogs barking, and Weber heard Jones yelling. Cf. *State v. Buelow*, Clark App. No. 2004 CA 18, 2004-Ohio-6052, ¶64 ("Buelow entered an unlocked house in the middle of night while everyone inside the house was apparently asleep. He had not been invited into the house and, in entering the house, he did not wake the guests sleeping on the couches in the front room. Although there is no direct evidence that Buelow attempted to prevent the discovery of his presence in the house, the jury could have reasonably drawn this inference from his behavior.").

{¶ 15} The jury also reasonably could have inferred that Gilbreath trespassed in the home with the intent to commit a crime, namely theft. The same facts that support a finding of stealth also may support an inference of criminal intent. *State v. Washington*, Scioto App. No. 09CA3303, 2010-Ohio-5366, ¶10. Although Gilbreath was apprehended before he could steal anything, he quietly had entered the home in the middle of the night and was discovered in the vicinity of tools while "playing with" objects on a table. These facts support an inference of an intent to steal. Moreover, in *State v. Levingston* (1995), 106 Ohio App.3d 433, 436, this court reasoned that "[w]here a defendant is apprehended within a structure that he has forcibly

entered, there is a reasonable inference that he did so with the intent to commit a theft offense in the absence of circumstances giving rise to a different inference." We reach the same conclusion here with regard to Gilbreath's entry by stealth.

{¶ 16} If not to commit a crime, the only other conceivable reason he might have entered the home was due to a mistake. As set forth above, however, he entered in the middle of the night while everyone was asleep, did not attempt to wake anyone, made little noise, was found touching items on a table, and began moving toward the front door when he was discovered. Under these circumstances, the jury fairly could have inferred that Gilbreath had the requisite intent to commit a crime.

{¶ 17} Having reviewed the record, we believe a rational trier of fact could have found Gilbreath guilty of burglary, and the evidence does not weigh heavily against his conviction. Accordingly, we overrule his assignment of error and affirm the judgment of the Clark County Common Pleas Court.

. . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.


Copies mailed to:

Andrew R. Picek
Kathryn L. Bowling
Hon. Richard J. O'Neill