[Cite as *State v. Wells*, 2022-Ohio-30.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-19 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-671 |
| | : | |
| GREGORY WELLS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of January, 2022.

. . . . . . . . . . .

ANDREA K. BOYD, Atty. Reg. No. 0090468, Special Prosecuting Attorney, Office of the Ohio Attorney General, 30 East Broad Street, 23rd Floor, Columbus, Ohio 43215
      Attorney for Plaintiff-Appellee

JOE CLOUD, Atty. Reg. No. 0040301, 3973 Dayton-Xenia Road, Beavercreek, Ohio 45432
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

**{¶ 1}** Defendant-Appellant Gregory Wells was tried by a jury and convicted of attempted murder with a firearm specification, felonious assault, improper handling of a firearm in a motor vehicle, and having weapons while under disability. He was sentenced to a total of 18 and one half years to 24 years in prison. Wells now appeals the judgment of the trial court, raising five assignments of error. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.     Facts and Procedural History

**{¶ 2}** Gregory Wells, Kiiesha Battle, and Kenny Danner were involved in a love triangle. Battle and Danner had been romantically involved in a somewhat-serious relationship since 2016 and lived together; Battle and Wells had been in an on-again, off-again casual sexual relationship since 2004 or 2005. Battle and Wells managed to keep their affair secret until October 2019, when Danner came home one night to find Battle and Wells in bed together, partially clothed. The altercation that ensued left both men injured, though testimony seemed to suggest that Wells got the worst of it. There is no evidence in the record of another physical altercation between Danner and Wells after the 2019 incident, but Battle admitted that she and Wells continued to be sexually involved.

**{¶ 3}** In the evening of October 12, 2020, Danner pulled his car in front of the home he shared with Battle after making a quick trip to the gas station to pick up some drinks to have with dinner. As Danner was sitting there, talking on his phone, Wells pulled up in his dark blue Buick, emerged from the driver's seat, and opened fire at Danner from just outside the passenger side window of Danner's car. Bullets riddled the passenger side of

the vehicle and many struck Danner. Wells continued to shoot as Danner fell out of the car in an attempt to get to the safety of his house. Wells returned to his car and left the scene.

{¶ 4} Danner made it inside and was tended to by Battle. She testified that she heard the shots and ran to the front door to see Danner trying to get inside, "just bleeding everywhere." Trial Tr. at 212. She quickly called 911 and was instructed by the dispatcher to ask Danner who shot him. He immediately identified Wells. Medics soon arrived and transported Danner to Springfield Regional Medical Center, where he was stabilized and then flown to Miami Valley Hospital.

{¶ 5} Danner's injuries were significant. He was shot at least six times and had wounds to his back, shoulder, neck, leg, elbow, and knee. Battle testified that she thought "there were three or four holes in his back. They were all over his chest, his arm, leg. I think his neck was grazed. Like, [bullet holes] were just everywhere." Trial Tr. at 212. Overall, Danner was hospitalized for approximately a month, and a bullet remains in his leg. Danner testified at trial that he was still going to physical therapy twice per week and was unsure if he would ever work again due to numbness and paralysis of his right hand.

{¶ 6} Wells was charged with attempted murder (with a firearm specification), felonious assault, improper handling of a firearm in a motor vehicle, and having weapons under disability. The case proceeded to a three-day trial in March 2021. The jury heard testimony from Danner, Battle, and members of law enforcement, including Detective Justin Massie and Jeff Moran, the criminal intelligence unit supervisor for the Ohio State Highway Patrol. Wells testified on his own behalf. He admitted that he shot Danner, but claimed it was done in the heat of passion and that the act was not done with the intent

to kill Danner. The jury also saw dozens of exhibits, including surveillance video from a neighbor's house which captured the shooting.

{¶ 7} Wells was found guilty of all charges and specifications. At the disposition, the attempted murder and felonious assault counts were merged for sentencing purposes, and the State opted to proceed on the attempted murder count. Wells was sentenced to a total of 18 and one half to 24 years in prison.

## II. Discovery Issues

{¶ 8} In his first and second assignments of error, Wells argues that the trial court erred by failing to enforce discovery rules pursuant to Crim.R. 16, and because of that, he was denied a fair trial. The factual basis for Wells' argument revolves around the allegation that the State failed to provide him with an itemized and detailed witness list prior to trial.

{¶ 9} Crim.R. 16 directs discovery in criminal cases. "This rule is to provide all parties * * * with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The purpose of the Rule is "'to prevent surprise and the secreting of evidence favorable to one party.'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 19, quoting *Lakewood v. Papedelis*, 21 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987).

{¶ 10} As applicable to this case, Crim.R. 16(I) provides that each party must provide a written witness list to opposing counsel that includes the names and addresses of witnesses who they intend to call in their case-in-chief, rebuttal, or surrebuttal. Crim.R.(I). If it is brought to the attention of the trial court that a party has not complied

with Crim.R. 16, the court may grant a continuance, prohibit the party from introducing the material not disclosed, or "it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶ 11} When faced with a purported violation of Crim.R. 16, the trial court should consider (1) whether the failure to disclose was a willful violation of the Rule; (2) whether knowledge of the undisclosed material would have benefitted the accused in the preparation of a defense; and (3) whether the defendant was prejudiced. *Darmond* at ¶ 35. We review the trial court's decision under an abuse of discretion standard. *State v. Blanken*, 2d Dist. Clark No. 2012-CA-73, 2014-Ohio-5361, ¶ 16. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

{¶ 12} In this case, there was a discovery mix-up on the part of the State. It is undisputed that the State provided Wells with discovery months before the trial, which included police reports and written statements with the identities of all potential witnesses. The State, however, inadvertently electronically filed its itemized witness list for this trial in another one of Wells' criminal cases in which he was represented by the same attorney. The State attempted, in good faith, to comply with its discovery duty, but made a mistake: submitting the list in the wrong case, but to the correct defendant and attorney. It was not a willful violation of Crim.R. 16(I).

{¶ 13} The second *Darmond* factor is not implicated either. There is no evidence that Wells would have benefited in the preparation of his defense had there not been the violation. He was in possession of the names and addresses of the potential witnesses in

the form of the police reports and statements, he could have, with minimal effort, discovered the witnesses the State was to likely call, and Wells (by way of his attorney) could have followed up with the State to gain access to the itemized list. If the State refused to turn it over, then Wells had another option – a motion to compel pursuant to Crim.R. 16(M). Instead, Wells waited until the morning of trial to raise the issue, and by that time, his ability to use the motion to compel had expired, as according to the Rule, "[a] motion to compel compliance with this rule shall be made no later than seven days prior to trial." Crim.R. 16(M).

{¶ 14} Finally, Wells was not prejudiced by the violation. The record reflects that there was a mountain of evidence pointing to Wells' guilt. He was identified by Danner, the victim, as the shooter multiple times; first, moments after the shooting on the phone with 911, then in the hospital, and finally, on the stand at trial. Wells took the stand at trial and admitted, no fewer than five times, to shooting Danner. Trial Tr. at 472, 496, 498, 500, 512. Google cell phone data also confirmed that Wells was within 17 meters of the crime scene at the time of the shooting. And perhaps as the most important evidence of all, the incident was caught on tape. It cannot be said that the outcome of the trial would have been different if Wells had received the itemized witness list.

{¶ 15} The trial court did not abuse its discretion by denying Wells' request for a continuance or the exclusion of evidence, and Wells was not denied a fair trial. The first and second assignments of error are overruled.

### III.     Witness Testimony

{¶ 16} In his third and fourth assignments of error, Wells argues that the trial court erred by permitting Jeff Moran, a criminal intelligence supervisor at OSHP, to testify as

an expert about Wells' cell phone location data. The State counters that Moran was not an expert witness as the court never qualified him as such. Further, it asserts that his testimony was not technical in nature and that he was merely testifying as a lay witness. We agree with the State's analysis.

**{¶ 17}** The Rules of Evidence delineates two forms of witness testimony – lay and expert. "The distinction between lay and expert witness opinion testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." 28 Ohio Jurisprudence 3d, Criminal Law: Procedure, Section 1641. *See State v. McKee*, 91 Ohio St.3d 292, 2001-Ohio-40, 744 N.E.2d 737.

**{¶ 18}** Evid.R. 701 states that lay witness testimony is limited to opinions or inferences that are: (1) rationally based on the perception of the witness; and (2) helpful to a clear understanding of the witnesses' testimony or the determination of a fact in question. In other words, a witness must have first-hand knowledge of the subject of his or her testimony and the opinion must be one that a rational person would form based on the observed facts. It also must help the trier of fact in understanding the testimony of the witness or determining a fact in issue. *Id*.

**{¶ 19}** Trial courts have considerable discretion in admitting the testimony of lay witnesses, and we evaluate the court's decision for abuse of discretion. *Brown v. Burnett*, 2020-Ohio-297, 144 N.E.3d 475, ¶ 28 (2d Dist.).

**{¶ 20}** A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand

the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable methods and principles; and (4) the expert has reliably applied the methods and principles to the facts of the case. Evid.R. 702.

{¶ 21} At trial, the State presented two witnesses who testified about Wells' cell phone location data. Detective Massie testified that he obtained data from Google in the form of a spreadsheet with the date, time, latitude, longitude, device identification, and display radius. He then testified that to ascertain the location of Wells' cell phone, he simply plotted the latitude and longitude on a map. Massie concluded that Wells' cell phone was near 814 Cedar Street at the time of the shooting.

{¶ 22} To double-check his work, Detective Massie sent the same data set to Moran at OSHP. Moran testified that he ran the data through software that his agency possessed (Detective Massie testified that he soon-after learned his department also had the software) and came to the same conclusion that Detective Massie had – that Wells' phone was within 17 meters of 814 Cedar Street at the time of the shooting.

{¶ 23}  Moran also testified, however, that running the data through the program was not necessary. "It's very straight-forward. It has latitude and longitude, which is something you can easily plot on a map with very, very little technology." Trial Tr. at 243-244. Moran "simply upload[ed] the records that [were] provided into a program, and based on the data already provided by, in this case, Google, those positions [were] mapped." Trial Tr. at 263. Finally, Moran testified that he was not rendering an opinion, simply noting where the coordinates were on the map. Trial Tr. at 267.

{¶ 24} At trial, the State never asked that Moran be qualified as an expert witness,

and the court never classified him in that manner. The record reflects that Moran did not express an opinion or interpret anything. He just noted where the coordinates were on the map. Moran essentially had the same testimony as Detective Massie, who, incidentally, Wells does not claim was testifying as an expert. We cannot say that the trial court abused its discretion when it permitted Moran to testify as a lay witness.

{¶ 25} Other Ohio courts of appeal have held similarly. In *State v. Robinson*, 4th Dist. Washington No. 16CA22, 2017-Ohio-8273, a detective testified as a lay witness about the location of the defendant's cell phone based on data received from Verizon. The Fourth District affirmed the trial court's decision to classify the detective as a lay witness, stating "testimony concerning a defendant's cell phone records and the location of cellular towers used by a defendant's phone in relation to locations relevant to the crime constitutes lay opinion testimony that does not require specialized knowledge, skill, experience, training, or education." *Id.* at ¶ 66. Likewise, in the case at bar, Moran's testimony did not require any specialization or skill; he just told the jurors where the coordinates were on the map.

{¶ 26} Wells' third and fourth assignments of error are overruled.

### IV. Cumulative Error

{¶ 27} In this fifth and final assignment of error, Wells contends that he was denied a fair trial due to cumulative error of the court.

{¶ 28} Under the doctrine of cumulative error, a conviction will be reversed where the cumulative effect of trial court errors deprives a defendant of the constitutional right to a fair trial, even though each instance of error, by itself, does not constitute cause for reversal. *State v. York*, 2018-Ohio-612, 107 N.E.3d 672, ¶ 29 (2d Dist.). The doctrine,

however, does not apply unless there are "multiple instances of harmless error." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).

{¶ 29} "In order to find cumulative error, we must find: (1) that multiple errors were committed at trial, and (2) there is a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors." *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 58.

{¶ 30} Our review of the record has not revealed any errors, let alone multiple ones. We previously determined that the trial court did not err when it denied Wells' request for a continuance or exclusion of evidence based on the State electronically sending the itemized witness list to the wrong case file. Likewise, we concluded that there was no error in Jeff Moran's testifying as a lay witness as opposed to an expert. Because no errors were found, cumulative error cannot exist. Wells' fifth assignment of error is overruled.

## V.     Conclusion

{¶ 31} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


TUCKER, P. J. and WELBAUM, J., concur.


Copies sent to:

Andrea K. Boyd
Joe Cloud
Hon. Douglas M. Rastatter