**[Cite as *State v. Stone*, 2024-Ohio-177.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 2022-CR-0565 |
| | : | |
| BIANCA V. STONE | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 19, 2024

. . . . . . . . . . .

NICOLE K. DIETZ, Attorney for Appellant

MEGAN A. HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Bianca V. Stone, aka Bianca Chappelle, was convicted after a jury trial in the Greene County Court of Common Pleas of attempted trespass in a habitation when a person is present or likely to be present, a fifth-degree felony, and possession of criminal tools, a first-degree misdemeanor. Stone appeals from her convictions, claiming that the

trial court erred in (1) excluding certain testimony from a police officer, (2) denying her Crim.R. 29 motion for an acquittal, and (3) not providing a jury instruction on criminal trespass as a lesser included offense. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} At approximately 12:45 a.m. on December 7, 2022, Stone went to the home of her former husband's brother, crawled under the tall security gate, and approached the house. Stone's former sister-in-law, niece, and nephew were inside the residence. Her former sister-in-law, who was alerted that someone was at the gate, called 911. As she waited for the police to arrive, she saw someone outside her dining room windows and soon heard her front door's doorknob "jiggle." When law enforcement officers arrived, they found Stone standing on the front porch of the residence. After a search, a prybar or crowbar that did not belong to the family was located on the porch.

{¶ 3} Stone was charged with attempted trespass in a habitation when a person is present or likely to be present and possession of criminal tools, both felonies of the fifth degree. The matter proceeded to a jury trial beginning on March 6, 2023. The State presented the testimony of the homeowners and three law enforcement officers.

{¶ 4} Stone testified on her own behalf and called the two individuals who drove her to her in-laws' home and an additional law enforcement officer as defense witnesses. Stone asserted that she had come to the house to do laundry and to show the family a bike. She acknowledged that she had not been invited to the residence, but she said that she believed she could come to the home at any time and had the passcode to a

prior home, which she thought would still work. Stone denied that she intended to break into the residence and stated that she routinely carried a crowbar, particularly when she planned to ride her bike alone.

{¶ 5} The jury found Stone guilty of both charged offenses. However, it concluded that the crowbar was not a criminal tool used to commit trespass in a habitation, thus reducing the degree of the possession of criminal tools offense to a first-degree misdemeanor. After a presentence investigation, the trial court imposed five years of intensive community control supervision with various conditions and a six-month jail sentence.

{¶ 6} Stone appeals from her conviction, raising three assignments of error. We will address them in an order that facilitates our analysis.

## II. Sufficiency of the State's Evidence

{¶ 7} In her second assignment of error, Stone claims that the trial court erred in failing to grant her Crim.R. 29(A) motion because the State did not present sufficient evidence to support her conviction. She argues that there was no evidence that she (1) act knowingly, and (2) trespassed with "force, stealth, or deception."

{¶ 8} When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a claim based on the sufficiency of the evidence. *State v. Page*, 2d Dist. Montgomery No. 26670, 2017-Ohio-568, ¶ 7, citing *State v. Sheppeard*, 2d Dist. Clark No. 2012-CA-27, 2013-Ohio-812, ¶ 51. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict

as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 9} In reviewing the trial court's denial of a Crim.R. 29(A) motion at the end of the State's case, we consider only the evidence that had been presented prior to the motion. *State v. Jackson*, 2d Dist. Montgomery No. 29343, 2022-Ohio-2805, ¶ 9; *State v. Powell*, 2d Dist. Montgomery No. 27951, 2018-Ohio-4693, ¶ 22, citing *Sheppeard* at ¶ 51. For Crim.R. 29(A) motions made after the defense's evidence, we consider all of the evidence admitted at trial. *See State v. Harris*, 2d Dist. Montgomery No. 29379, 2023-Ohio-648, ¶ 33; *State v. Stokes*, 2d Dist. Champaign No. 2015-CA-22, 2016-Ohio-612, ¶ 26.

{¶ 10} Stone sought an acquittal under Crim.R. 29(A) both at the end of the State's case and after all the evidence had been presented. In her appellate brief, Stone points in part to her own testimony in support of her claim that the State's evidence was insufficient. Accordingly, we infer that her assignment of error is directed toward the trial court's denial of the Crim.R. 29(A) motion she made after the defense case had been presented.

{¶ 11} Stone challenges her conviction for attempted trespass in a habitation when

a person is present or likely to be present, in violation of R.C. 2911.12(B) and R.C. 2923.02(A).   The attempt statute states, that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."   R.C. 2923.02(A).

{¶ 12} R.C. 2911.12(B) provides: "No person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."   For purposes of this offense, trespass means to "knowingly enter or remain on the land or premises of another" without a privilege to be there.   R.C. 2911.21(A)(1); *see also State v. Baker*, 2016-Ohio-315, 58 N.E.3d 498, ¶ 21 (2d Dist.).   Stone does not dispute in her appeal that the property at issue was a habitation and that her former relatives were present or likely to be present there in the early morning hours of December 7, 2022.

**A. Knowingly**

{¶ 13} Stone first challenges the State's evidence that she acted "knowingly." She asserts that there was no evidence that she "would have any reason to know she would not be able to be at the residence."

{¶ 14} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.   A person has knowledge of circumstances when the person is aware that such circumstances probably exist.   When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively

believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

{¶ 15} "Culpable mental states are frequently demonstrated through circumstantial evidence." *State v. Hypes*, 2d Dist. Clark No. 2018-CA-110, 2019-Ohio-4096 ¶ 21, quoting *State v. Fox*, 2018-Ohio-501, 106 N.E.3d 224, ¶ 14 (10th Dist.). Circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991); *State v. St. John*, 2d Dist. Montgomery No. 27988, 2019-Ohio-650, ¶ 49. In some cases, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson*, 57 Ohio St.3d 29, 38, 565 N.E.2d 549 (1991). A defendant's state of mind may be inferred from the totality of the circumstances. *State v. Murphy*, 2d Dist. Montgomery No. 27802, 2018-Ohio-3506, ¶ 16.

{¶ 16} According to the State's evidence, in December 2022, Stone's former brother-in-law and sister-in-law, David and Elaine Chappelle, lived at a home near Yellow Springs with their 19-year-old son and 13-year-old daughter. The family had resided there for seven years. A fence enclosed the Chappelles' property, and there was a security gate with an intercom, bell, and closed-circuit camera system. Upon driving up to the gate, a visitor would press a button, which would send a notification to the residents' phone that someone had rung the bell. The camera and intercom system allowed the Chappelles to see who was there, communicate with the visitor, and either grant or deny access. The gate could also be opened with a remote control (like a garage door opener) or by entering a code on a keypad.

{¶ 17} Stone had formerly been married to David's brother and had known David and Elaine for approximately 23 years. However, Elaine testified that they "don't really see each other at all" and communicated "maybe once in a while." Trial Tr. at 15. David similarly testified that their relationship with Stone was "fairly distant," although they had "reconnected to some degree around that time period." Trial Tr. at 48. Neither David nor Elaine would call Stone, and Stone would call "very rarely." Trial Tr. at 16. David indicated that if he wanted to reach Stone, he would reach her through a third-party, such as his sister. Stone had last visited the Chappelles' home on Mother's Day 2019. Trial Tr. at 16. She had never stayed overnight. Trial Tr. at 17. Both Elaine and David testified that Stone did not have a key, security passcodes, or the mobile device application, and she did not have an open invitation to visit. Trial Tr. at 17, 36, 56, 64.

{¶ 18} In the early morning hours of December 7, 2022, Stone's friend and his girlfriend drove Stone to the Chappelles' residence in their van. Stone exited the van carrying a crowbar. Her friend unloaded two bikes from the vehicle. Stone apparently tried to enter numbers into the keypad, *see* State's Exhibit 1, but the gate did not open. Soon after, she maneuvered under the gate with her crowbar.

{¶ 19} According to Elaine, at approximately 12:46 a.m., her housekeeper, who also had remote access to the security system, alerted Elaine that she had seen people at the gate through the camera. The housekeeper also sent photos showing what was happening outside the gate. One photo (State's Exhibit 7) showed a woman standing with a crowbar. Elaine did not recognize the person at the gate from the photo. Elaine had received notifications that there was motion in front of the gate, but no one had rung

the bell.

{¶ 20} Elaine went downstairs and tried to look out a window to see if anyone was coming through the gate. Because the van reportedly was still there, she called the police. While on the phone with a dispatcher, Elaine went to look out an upstairs window, then returned downstairs to turn off lights in the back of the house. As she was crossing to go back upstairs, she saw an unknown person in a hoodie right outside her dining room windows. Trial Tr. at 27. Elaine ran upstairs, believing that the person was trying to find a way into the house. She next heard the front doorknob jiggle. Trial Tr. at 31.

{¶ 21} Law enforcement officers arrived and found two people in the van outside the closed gate. Upon running up to the house, Deputy Nathaniel Slone located Stone on the front porch; the porch lights were not on. Trial Tr. at 126, State's Ex. 16. When Elaine learned that Stone was outside the front door, Elaine became "very upset." Trial Tr. at 42. No one in the household had invited her or given her permission to be there. Trial Tr. at 42, 56. Stone did not have permission to crawl under the gate. Trial Tr. at 56.

{¶ 22} On cross-examination, Elaine and David acknowledged that Stone resided in a home that they owned, that their children were close, and that they had traveled with Stone as family, the last time being around Thanksgiving 2021. Stone testified similarly. However, Elaine and David denied that the family relationship provided Stone access to their home.

{¶ 23} At trial, Stone acknowledged that she had not been invited to the Chappelles' home and that she had not been expected on December 7, 2022. She also

admitted that she had crawled under the gate, entered her relatives' property, and gone up to the home carrying her crowbar.

{¶ 24} Construing the evidence in the light most favorable to the State, there was sufficient evidence that Stone had knowingly attempted to trespass in the Chappelles' home. Stone arrived after midnight when she was neither invited nor expected. The lights for the front porch of the house were off. At that time, Stone had a distant relationship with David and Elaine, she had not visited their home in several years, and she did not have either the permission or the items needed (keys, security codes, app) to lawfully open the security gate and enter the house. Stone did not use the intercom/bell system to contact the family and, instead, crawled under the closed security gate. Contrary to Stone's argument, the State's evidence demonstrated that she had every reason to know that she would not be welcome at the Chappelles' home that night. Rather, the State's evidence established that Stone knowingly had gone onto the Chappelles' property and attempted to enter their home without privilege to be there.

**B. Force, Stealth, or Deception**

{¶ 25} Stone next argues that the State failed to present sufficient evidence that she employed force, stealth, or deception. She emphasizes that she never tried to conceal who she was and she could be seen on the gate camera. She further argues that the only evidence of "force" was Elaine's testimony that she heard a "jiggle of the door" from the second floor of the house.

{¶ 26} The "force, stealth, or deception" element of R.C. 2911.12(B) refers to how a trespasser entered (or, in this case, attempted to enter) the habitation. *Accord State*

*v. Bertram*, Ohio Slip Opinion No. 2023-Ohio-1456, __ N.E.3d __. ¶ 10 (discussing similar element for burglary under R.C. 2911.12(A)(2)). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Accordingly, the requirement of "force" is satisfied by "any effort physically exerted." *State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205, ¶ 16 (2d Dist.), quoting *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21. The opening of a closed, but unlocked, door or window is sufficient to meet this requirement. *E.g., State v. Ball*, 2d Dist. Clark No. 2017-CA-54, 2018-Ohio-605, ¶ 15 (defendant's opening of closed but unlocked window was sufficient to establish he entered by force); *State v. Cantrell*, 2d Dist. Montgomery No. 26975, 2016-Ohio-7623, ¶ 12 (opening a screen door to walk through an open inner door of victim's apartment was sufficient to prove "force").

{¶ 27} The term "stealth" is not defined in the Ohio Revised Code, but we and other Ohio appellate courts have defined it to mean "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within" the relevant structure. *Johnson* at ¶ 18, citing*, e.g., State v. Reeves*, 2d Dist. Montgomery No. 16987, 1999 WL 129469 (Mar. 12, 1999); *Bertram* at ¶ 14. Entering a house at night while "under the cover of darkness," particularly when occupants are likely to be asleep, is sufficient to establish the element of stealth. *See, e.g., State v. Steen*, 2d Dist. Darke No. 2019-CA-16, 2020-Ohio-4598, ¶ 30; *State v. Gilbreath*, 2d Dist. Clark No. 2010-CA-31, 2011-Ohio-2310, ¶ 14; *State v. Buelow*, 2d Dist. Clark No. 2004 CA 18, 2004-Ohio-6052, ¶ 64.

{¶ 28} The evidence at trial established that the Chappelles' house was located in

a rural area along a "very dark" street, although there was better visibility around the security gate, which was close to a streetlight. Stone came to the family's residence after midnight, crawled under the security gate, and approached the house under cover of darkness. Elaine saw a person in a hoodie walk past her dining room window; the person's hood was up. Yellow Springs Officer Kenneth Harris testified that Stone was wearing a hat and "kind of dark" clothing. Stone was found on the front porch, which was not illuminated. The State's evidence was sufficient to prove that Stone had attempted to trespass in the Chappelles' residence by stealth.

{¶ 29} As to whether Stone used force, Elaine testified that she heard someone jiggling the doorknob to the front door. This evidence alone was sufficient to prove that Stone had attempted to open the closed front door, thus establishing "force." We note that Stone also brought a crowbar or prybar with her and apparently hid it on the Chappelles' porch. Construing the evidence in the State's favor, Stone's possession of the prybar and her hiding it on the porch constituted further evidence that, had Stone been successful, she would have entered the habitation by force.

{¶ 30} Stone's second assignment of error is overruled.

### III. Exclusion of Police Officer's Opinion Testimony

{¶ 31} In her first assignment of error, Stone claims that the trial court erred by improperly excluding lay opinion testimony by Deputy Richard Elliott about her intent on December 7, 2022. She argues that lay opinion testimony from law enforcement officers is permitted under Evid.R. 701, and that she was prejudiced because "a large part of the case turned on the intent of Bianca the night in question." In response, the State asserts

that the trial court did not exclude opinion testimony from Deputy Elliott. Instead, the State argues, the trial court excluded testimony of what the deputy told Elaine about Stone's intent, which would have been irrelevant and based on hearsay. We agree with the State that the trial court properly precluded the proffered questions, and we begin our analysis with the various evidentiary rules in play.

{¶ 32} "A trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion." *State v. Hunt*, 2d Dist. Darke No. 2018-CA-9, 2019-Ohio-2352, ¶ 27. A trial court abuses its discretion if it makes an unreasonable, unconscionable, or arbitrary decision. *State v. Sutherland,* 2021-Ohio-2433, 173 N.E.3d 942, ¶ 23 (2d Dist.).

{¶ 33} When engaging in this gatekeeper capacity, the trial court must determine if potential evidence is relevant. *Id.* at ¶ 24. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Evid.R. 401. In other words, there must be some probative value to the evidence. Evidence that is not relevant is not admissible. *Id*.

{¶ 34} The Ohio Rules of Evidence delineate two forms of witness testimony: lay and expert. "The distinction between lay and expert witness opinion testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *State v. Wells*, 2d Dist. Clark No. 2021-CA-19, 2022-Ohio-30, ¶ 17, quoting 28 Ohio Jurisprudence 3d, Criminal Law: Procedure, Section 1641; *see State v. McKee*,

91 Ohio St.3d 292, 297, 744 N.E.2d 737, fn. 2.

{¶ 35} A lay witness may testify about opinions or inferences that are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. In other words, a witness must have first-hand knowledge of the subject of his or her testimony and the opinion must be one that a rational person would form based on the observed facts. It also must help the trier of fact in understanding the testimony of the witness or determining a fact in issue. *Wells* at ¶ 18; *State v. Bolling*, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509, ¶ 12.

{¶ 36} Ohio appellate courts have permitted lay opinion testimony regarding a defendant's intent, provided that the testimony was based on the witness's personal observations and inferences. *E.g., State v. Galbraith*, 3rd Dist. Marion No. 9-11-61, 2012-Ohio-5231, ¶ 18-19 (officers could, based on their observations, testify as to defendant's intent in kicking another corrections officer); *State v. McClain*, 6th Dist. Lucas No. L-10-1088, 2012-Ohio-5264, ¶ 13 (detective's testimony that the quantity of drugs was consistent with intent to sell drugs fell within Evid.R. 701, as it was based on detective's perception and experience as a police officer). Moreover, "[i]t is well-settled that a police officer may testify concerning matters that are within his experience and observations that may aid the trier of fact in understanding the other testimony pursuant to Evid.R. 701." *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 108 (2d Dist.), quoting *State v. Tatum*, 10th Dist. Franklin No. 10AP-626, 2011-Ohio-907, ¶ 17.

{¶ 37} Under Evid.R. 801(C), "hearsay" is "a statement, other than one made by

the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In general, hearsay is not admissible. Evid.R. 802.

{¶ 38} "Certain statements are excluded from the definition of hearsay, including statements of a party-opponent where the statement is offered against that party." *State v. Cole*, 2d Dist. Miami No. 2013-CA-18, 2014-Ohio-233, ¶ 36, citing Evid.R. 801(D)(2)(a). "It is on that basis that confessions are readily admitted. That does not mean that the reverse, a denial of civil or criminal liability, is likewise admissible. A denial does not have the same inherent reliability as a person's admission against his [or her] own interest. It is, or at least very well may be, self-serving. Therefore, a denial remains inadmissible hearsay if the proponent offers the statement to prove the truth of the matter involved." *Id.*, quoting *State v. Beeson*, 2d Dist. Montgomery No. 19312, 2002-Ohio-4341, ¶ 55.

{¶ 39} Turning to the case before us, Stone's intent was relevant to her felony charge of possession of criminal tools in violation of R.C. 2923.24. That statute prohibits the possession of an item "with purpose to use it criminally." R.C. 2923.24(A). The offense is a fifth-degree felony if the item "was intended for use in the commission of a felony." R.C. 2923.24(C). In contrast, Stone's purpose was not relevant to the alleged attempted violation of R.C. 2911.12(B). Unlike aggravated burglary (R.C. 2911.11), burglary (R.C. 2911.12(A), or breaking and entering (R.C. 2911.13), each of which requires proof a specific purpose, trespass in a habitation when a person is present or likely to be present does not contain such a requirement.

{¶ 40} Stone's third witness was Deputy Elliott, one of the officers who responded

to the Chappelles' home. When asked what he had observed that night, Deputy Elliott testified that when he arrived at the scene, two Yellow Springs officers, another deputy from the Greene County Sheriff's Office (Deputy Slone), and their sergeant (Sergeant Dennis Nipper) were already there. After realizing that Deputy Slone and the Yellow Springs officers were with Stone, Deputy Elliott went inside the house to be with Sergeant Nipper, who was talking with Elaine. Nipper asked Elliott to retrieve a witness statement form that Elaine could complete. Deputy Elliott stated that he "stood by for the most part while Sergeant Nipper asked questions and stuff like that." Trial Tr. at 186.

{¶ 41} Deputy Elliott also checked the perimeter of the home to make sure there were no broken windows or someone they had missed. After seeing that the rear door of the residence was unlocked, the deputy advised Elaine of the situation and asked for permission to check the home. Elliott indicated that he and Sergeant Nipper checked the perimeter again and examined another house behind the Chappelles' house; all was secure and no one was located.

{¶ 42} Defense counsel next asked Deputy Elliott, "Now, did you share with Mrs. Chappelle your opinion about Ms. Stone-Chappelle's intentions of coming to the house?" Trial Tr. at 186. The prosecutor objected, arguing that the deputy's opinion as to Stone's intentions and whether he shared those with Elaine were not relevant to Stone's intentions and what she was doing there. During a lengthy sidebar discussion about how to rephrase the question, the prosecutor further expressed that defense counsel could not "go into what her [Stone's] intentions are. Again, the only way that he [Deputy Elliott] knows what her intentions are is based on what the Defendant said." Trial Tr. at 191-

Defense counsel argued that the answer to her question would be based on what the deputy observed. In response, the prosecutor reiterated her belief that the deputy could testify to his observations and what he told Elaine, but not about Stone's intentions. Trial Tr. at 194.

{¶ 43} In the end, the trial court did not allow defense counsel to ask two proffered questions: (1) "Did you in fact tell Elaine Chappelle that you believed Bianca Stone did not come to the residence with bad intent?" and (2) "Did you tell Ms. Elaine Chappelle and the investigator that she brings the crowbar to prevent violent experiences?" Trial Tr. at 200-201.

{¶ 44} Stone asserts that her proffered questions to Deputy Elliott should have been allowed because the deputy could properly provide a lay opinion about her intent, pursuant to Evid.R. 701. However, neither the proffered questions nor defense counsel's initial question prompting the objection directly asked Deputy Elliott for his opinion. Rather, as formulated, the questions asked the deputy if he had said certain things during a conversation with Elaine.

{¶ 45} Although evidence of Stone's intent that night would have been relevant to the possession of criminal tools charge, Deputy Elliott's statements *to Elaine* about Stone were not relevant. Nothing in the record suggests that his alleged statements to Elaine about Stone's intent or why she carried a crowbar would have been probative of Stone's actual intentions. Moreover, assuming that Deputy Elliott would have answered the proffered questions affirmatively, Deputy Elliott's statements to Elaine would have constituted inadmissible hearsay as they were prior out-of-court statements that were

offered for the truth of the matter of asserted (namely that Stone did not come to the Chappelles' residence with bad intent and that she had the crowbar to prevent violent experiences). We find nothing in the evidentiary rules that would have exempted the deputy's prior out-of-court statements from the hearsay definition, *see* Evid.R. 801(D)(1), or provided an exception to the hearsay rule, *see* Evid.R. 803. *See also State v. Bibbs*, 2016-Ohio-8396, 78 N.E.3d 343 (3d Dist.) (discussing why witness's prior out-of-court statement to the police was inadmissible hearsay).

{¶ 46} Finally, even if the proffered questions were construed as asking for Deputy Elliott's opinion of Stone's intent, there was nothing in the record to create a foundation for those questions. Defense counsel had asked Deputy Elliott about his observations at the scene. His response indicated that he saw Stone with Deputy Slone and two Yellow Springs officers but otherwise described his own actions with his sergeant and Elaine and searching the property. Deputy Elliott's testimony did not suggest that he had interacted with Stone or had observed her behavior, nor did he have first-hand knowledge of Stone's actions. There was no evidence that Deputy Elliott's opinion of Stone's intent, if any, was based on his personal observations and inferences. Rather, the record suggests that it would have come from statements made by Stone herself or the individuals who transported her to the Chappelles' home, which would make Deputy Elliott's statements to Elaine hearsay within hearsay.

{¶ 47} The trial court did not abuse its discretion in precluding Stone from asking the proffered questions to Deputy Elliott. Her first assignment of error is overruled.

**IV. Jury Instruction on Criminal Trespass**

{¶ 48} In her third assignment of error, Stone claims that the trial court erred by denying her request for a jury instruction on criminal trespass, which she asserts is a lesser included offense of trespass in a habitation.

{¶ 49} Jury instructions "must be given when they are correct, pertinent, and timely presented." *State v. Joy*, 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995). A trial court must fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder. *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus; *State v. Portis*, 2d Dist. Montgomery No. 28677, 2021-Ohio-608, ¶ 46. A jury may find a defendant not guilty of the charged offense but guilty of a lesser included offense. Crim.R. 31(C); R.C. 2945.74; *State v. Hanners*, 2d Dist. Montgomery No. 29375, 2022-Ohio-4114, ¶ 25.

{¶ 50} Courts employ a two-step analysis when determining whether an instruction on a lesser included offense is warranted. *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6. The first step involves evaluating whether an offense is generally a lesser included offense of the charged offense. *Id*. An offense qualifies as a lesser included offense where (1) one offense carries a greater penalty; (2) some element of the greater offense is not required to prove commission of the lesser offense; and (3) the greater offense, as statutorily defined, cannot be committed without the lesser offense also being committed. *See State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, paragraph two of the syllabus; *State v. Yantis*, 2023-Ohio-3820, __ N.E.3d __, ¶ 26 (2d Dist.).

{¶ 51} The second step requires a review of the evidence in the case and a

determination whether the defendant could be acquitted of the charged offense but found guilty of the lesser included offense. *Deanda* at ¶ 6. An instruction on a lesser included offense is "required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus; *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 21.

{¶ 52} Here, Stone requested a jury instruction on criminal trespass, as set forth in R.C. 2911.21(A)(1). Under that statute, a person commits criminal trespass when he or she, without privilege to do so, knowingly *enters or remains* on the land or premises of another. R.C. 2911.21(A)(1). Stone was charged with *attempted* trespass in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B) and 2923.02(A). As previously mentioned in our discussion of the elements of trespass in a habitation, the language of R.C. 2911.21(A)(1) is used to define "trespass" for purposes of R.C. 2911.12(B).

{¶ 53} Skipping to the second step of the lesser included offense analysis, Stone could not have been acquitted of the charged offense and yet found guilty of criminal trespass under the facts of this case. The State's evidence at trial established that Stone attempted to trespass in her former relatives' residence, but she did not, in fact, enter the home. Because there was no evidence that Stone entered or remained in her relatives' home, the evidence at trial did not support a conviction for criminal trespass related to the residence. The fact that Stone snuck under the gate and entered the grounds surrounding the home is irrelevant, as the charged offense concerned trespassing in the

Chappelles' "habitation," not on her former relatives' land.

{¶ 54} Stone's third assignment of error is overruled.

## V. Conclusion

{¶ 55} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .


TUCKER, J. and LEWIS, J., concur.