JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs appeal from a judgment in favor of defendants Dr. David D'Andrea, M.D. and Fairview Radiologists, Inc. based upon a jury verdict. In their sole assignment of error, plaintiffs urge that the trial court erred and abused its discretion by admitting the testimony of Dr. Michael Ulissey, M.D., concerning his review of plaintiff Diane Gray's June 1998 mammogram with the aid of a computer aided detection (CAD) device. The court did not abuse its discretion by admitting this testimony. Therefore, we affirm.
 Factual and Procedural Background {¶ 2} Plaintiffs Diane and Robert Gray filed their complaint on July 10, 2001, seeking discovery of original radiographic films in the possession of Fairview General Hospital, and alleging that defendants, Drs. Alison Pryce, M.D. and David D'Andrea, M.D., Fairview Radiologists, Inc. and Ridgepark Regional, were negligent in the care of Diane Gray. Plaintiffs' claims against Pryce and Ridgepark were settled and dismissed. The case proceeded to trial against Fairview Radiologists and Dr. D'Andrea in December 2002.
 {¶ 3} At trial, Diane Gray testified that she was diagnosed with breast cancer in March 2000, as a result of which she underwent a mastectomy. She received chemotherapy after she recovered from the surgery. In November 2001, she learned that the cancer had metastasized to her lungs. She described her prognosis as "not good." A suggestion of death was filed in this appeal, indicating that Ms. Gray died on March 28, 2003. The executor of her estate was substituted as plaintiff-appellant in her place.
 {¶ 4} Ms. Gray underwent routine annual mammography screenings before her breast cancer diagnosis. At trial, plaintiffs alleged that Dr. D'Andrea did not properly interpret a June 1998 mammogram. Plaintiffs contended the June 1998 mammogram showed suspicious microcalcifications which were indicative of cancer, and which Dr. D'Andrea should have investigated further. Had he done so, plaintiffs claimed, Ms. Gray's cancer would have been found earlier, when it could have been cured.
 {¶ 5} Plaintiffs' expert witness, Dr. Ellen B. Mendelson, M.D., testified that the mammogram showed small calcium deposits grouped in a tight, irregular pattern suggestive of cancer. She asserted that the standard of care required that the doctor recall the patient for additional views with magnification to examine more closely the extent and appearance of the calcifications. She opined that, had Dr. D'Andrea done additional tests, a biopsy would most likely have been done, because the calcifications presented a significant likelihood of malignancy, and the biopsy would have confirmed the presence of cancer. On cross-examination, she conceded that she had reviewed original mammograms from 1999 and 2000 before she saw the original June 1998 mammogram.
 {¶ 6} Plaintiffs' other expert witness, Dr. Wendy Shaw, M.D., testified that she observed groupings of calcifications and she would have brought the patient back for additional films to magnify them. However, she admitted on cross-examination that she did not note any suspicious calcifications when she first reviewed the 1998 mammograms; she only observed them after she reviewed subsequent mammograms which showed a tumor in the area. She testified that foreknowledge of a tumor increases sensitivity and prejudices one's review of previous films. She could not testify that Dr. D'Andrea did not meet the standard of care.
 {¶ 7} Defense expert witness Dr. James S. Simpson, M.D., testified that the 1998 mammogram showed calcifications, but that there was a high probability that they were benign, and he would not have recalled the patient for additional views. He testified that Dr. D'Andrea met the standard of care with respect to his interpretations of Ms. Gray's mammograms.
 {¶ 8} Dr. Ulissey testified that he was board certified in diagnostic radiology and had published an article in a peer review journal in September 2001 on the use of computer aided detection ("CAD") in mammography, assessing the CAD's accuracy in analyzing mammograms and marking potential cancers. He testified that the CAD was approved by the Food and Drug Administration in 1998, and had gained general acceptance in the medical community as an aid in detecting cancers, though its use was not required as part of the standard of care.
 {¶ 9} Dr. Ulissey testified that the CAD scans a mammogram and analyzes it looking for "footprints of malignancy." If it finds any, it places a mark on a computer display of the mammogram in the area where it found the footprint. The radiologist will first look at the mammogram without the benefit of the CAD reading, then review any areas marked by the CAD. Dr. Ulissey testified that he ran plaintiff's June 1998 mammogram through the CAD and the CAD found no evidence of malignancy. He further testified that if the computer does not mark a calcium deposit, "there is greater than a 99% chance that no malignant calcium is on that film." He further opined that there were no malignant calcifications on the June 1998 mammogram.
 {¶ 10} At the conclusion of the trial, the jury returned a verdict finding that plaintiffs had not proven by a preponderance of the evidence that the defendants were negligent. The court entered judgment for the defendants accordingly.
 Law and Analysis {¶ 11} Plaintiffs assert that the court erred or abused its discretion by allowing Dr. Ulissey to testify. First, they contend that the CAD results were inadmissible hearsay. We disagree. Hearsay is defined as an out-of-court "assertion" by a "person" offered into evidence to prove the truth of the matter asserted. Evid.R. 801. The CAD's failure to find and mark any potentially malignant microcalcifications could be viewed as an "assertion" that none were there.[1] However, the CAD device is not a person. The results were not the consequence of a search of a database of information created by a person, the accuracy of which would depend upon the accuracy and completeness of the database. Cf. Peters v. State Lottery Commn. (Dec. 18, 1990), Franklin App. No. 90AP-194; State v. Sammour (Apr. 16, 1987), Cuyahoga App. No. 51584. Rather, the result was a scientific analysis conducted by a computer which performed a series of complex mathematical calculations based upon detailed information it drew from an x-ray. Therefore, we do not find the computer analysis to be hearsay. See State v. Duff (Feb. 8, 2001), Franklin App. No. 00AP-562 and cases cited therein (telephone caller identification information provided to a telephone user is based on computer-generated information and not simply a repetition of prior recorded human output or observation, and thus does not fall within the scope of the hearsay rule).
 {¶ 12} Dr. Ulissey's testimony about the CAD result was a physical observation of what he saw (or, more accurately, did not see) on the computer screen, made under oath at trial, and therefore was not hearsay.
 {¶ 13} Next, plaintiffs contend that Dr. Ulissey's report of the CAD result was not appropriate expert testimony under Evid.R. 702. Specifically, plaintiffs argue that Dr. Ulissey's testimony was not based on "reliable scientific, technical or other specialized information," because there was no evidence that the theory behind the CAD was objectively verifiable, that the test performed by Dr. Ulissey reliably implemented that theory, and that the particular test he performed was conducted in a way that would yield accurate results. See Evid.R. 702(C).
 {¶ 14} Plaintiffs did not challenge Dr. Ulissey's testimony on this basis at trial. They conducted a voir dire of Dr. Ulissey, then objected on two bases. First, they argued that the use of the CAD was not part of the standard of care in 1998, and second, that the CAD results were hearsay. We have previously held that the CAD results were not hearsay. The fact that the use of the CAD was not part of the standard of care is not relevant.
 {¶ 15} While the defendants might have borne the burden of proving Dr. Ulissey's testimony met the requirements of Evid.R. 702(C), plaintiffs first bore the burden of raising the issue. See State v. Hartman, 93 Ohio St.3d 274, 286, 2001-Ohio-1580. Accordingly, we confine our review to the question whether the admission of this testimony was plain error.
 {¶ 16} "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121.
 {¶ 17} Even if Dr. Ulissey's testimony should have been excluded (a conclusion we do not reach), plaintiffs cannot show that the admission of this testimony denied them a fair trial. There was conflicting testimony as to whether the 1998 mammogram showed potentially malignant microcalcifications, and whether Dr. D'Andrea breached the standard of care by failing to note them and order additional tests. Plaintiffs' expert testimony on these points was weak. Both of plaintiffs' experts reviewed the June 1998 mammogram after having seen subsequent mammograms which showed malignancies. The witnesses themselves testified that this knowledge prejudiced their review; indeed, it precluded one of them from testifying whether Dr. D'Andrea breached the standard of care. On the other hand, defense expert Dr. Simpson reviewed the mammograms in chronological order, and therefore only learned about the subsequently diagnosed cancer after he completed his review of the June 1998 mammogram. His report on the June 1998 mammogram did not note any suspicious microcalcifications. He further reviewed Dr. D'Andrea's report and found that it met the standard of care. Based upon this evidence, plaintiffs cannot show that the outcome of the trial clearly would have been different if the trial court had not admitted Dr. Ulissey's testimony. See, e.g., State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, ¶¶ 62 ¶ 63; State v. Lilley, Stark App. No. 2003CA00073, 2003-Ohio-6792, ¶ 39.
 {¶ 18} Accordingly, we affirm.
Judgment affirmed.
Corrigan, A.J., and Cooney, J., concur.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] There is no out-of-court statement by a person recording the test result, for example, in a report. Therefore, the results are not hearsay in this sense.