[Cite as *State v. Harris*, 2017-Ohio-4095.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27083 |
| | : | |
| v. | : | T.C. NO. 16-TRD-1240 |
| | : | |
| ANGELA S. HARRIS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___2nd___ day of _____June_____, 2017.

. . . . . . . . . . .

NOLAN C. THOMAS, Atty. Reg. No. 0078255, Prosecuting Attorney, 2325 Wilmington Pike, Kettering, Ohio 45420
        Attorney for Plaintiff-Appellee

DANIEL J. O'BRIEN, Atty. Reg. No. 0031461, 1210 Talbott Tower, 131 N. Ludlow Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} After a bench trial in Kettering Municipal Court, Angela Harris was found guilty of a marked lanes violation, in violation of R.C. 4511.33, a minor misdemeanor. The charge stemmed from a two-vehicle collision at the intersection of West Alex Bell and McEwen Roads in Washington Township, Ohio. The trial court imposed a $25 fine and

court costs. As a result of the conviction, two points would be assessed on Harris's driver's license. At Harris's request, the trial court stayed the judgment pending appeal.

{¶ 2} Harris raises three assignments: (1) the trial court erred in failing to inform her of and obtain a waiver of her right to counsel, (2) the trial court committed plain error in allowing a deputy to testify as an accident reconstruction expert, and (3) her conviction was based on insufficient evidence and was against the manifest weight of the evidence. We will address them in an order that facilitates our analysis.

{¶ 3} For the following reasons, the trial court's judgment will be affirmed.

## I. Defendant's Right to Counsel

{¶ 4} In her first assignment of error, Harris claims that the trial court erred in failing to inform her of her right to counsel. Harris further states that she never knowingly, intelligently, and voluntarily waived her right to counsel.

{¶ 5} In *State v. Wheeler*, 2016-Ohio-2964, 65 N.E.3d 182 (2d Dist.), we discussed a defendant's right to counsel when he (or she) is charged with a minor misdemeanor:

"[A] defendant has no constitutional right to court-appointed counsel when a criminal prosecution carries no possibility of incarceration." (Citations omitted.) *State v. Woods*, 2d Dist. Montgomery No. 16665, 1998 WL 906786, *4 (Dec. 31, 1998). Rather, a defendant merely has the right to retain counsel of his or her own choice. *State v. Bettah*, 5th Dist. Licking No. 05 CA 50, 2006-Ohio-1916, ¶ 42. Under that circumstance, we have held that a trial court is not obligated to advise a defendant of the right to counsel or to obtain a waiver of that right. *State v. Minne*, 2d Dist. Montgomery No. 23390, 2010-Ohio-2269, ¶ 20, citing *State v. Sturgill*, 3d

Dist. Auglaize No. 2-01-34, 2002 WL 596114, *2 (Apr. 18, 2002), and *State v. Wiest*, 1st Dist. Hamilton No. C-030674, 2004-Ohio-2577, ¶ 26-27.

> * * * Wheeler was charged with a minor misdemeanor, which does not carry the possibility of incarceration.  Because he was not facing the possibility of incarceration, Wheeler had no right to a court-appointed counsel and the trial court did not have any obligation to advise Wheeler of the right to counsel or to obtain a waiver of that right.   Therefore, we do not find that the trial court's failure to obtain a waiver of the right to counsel violated due process, as Wheeler had no such right to waive.   Without this right, the act of determining whether Wheeler understood the ramifications of representing himself or his capability of doing so was unwarranted.

*Wheeler* at ¶ 23-24.

**{¶ 6}** Here, Harris was charged with a marked lanes violation, in violation of R.C. 4511.33.  Pursuant to R.C. 4511.33(B), a marked lanes violation is generally a minor misdemeanor.[1]   As discussed in *Wheeler*, because a minor misdemeanor does not carry the possibility of incarceration, Harris had no right to court-appointed counsel, and the trial court was not required to inform her of her right to counsel and to obtain a waiver of her right to counsel.

**{¶ 7}** Harris's first assignment of error is overruled.

### II. Sufficiency and Manifest Weight of the Evidence

---

[1] A marked lanes violation can be a fourth-degree misdemeanor or a third-degree misdemeanor if the offender previously has been convicted of one or more predicate motor vehicle or traffic offenses within one year of the offense, R.C. 4511.33(B), but the record reflects that it was a minor misdemeanor in this case.

{¶ 8} In her third assignment of error, Harris claims that her conviction was based on insufficient evidence and was against the manifest weight of the evidence.

{¶ 9} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 10} In contrast, an argument based on the weight of the evidence "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12; *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} Because the trier of fact sees and hears the witnesses at trial, we must defer

to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 12} At trial, the State presented two witness: Adrienne Crouch, the driver of the other vehicle, and Deputy Josh Wolf, who responded to the collision. Harris represented herself at trial and testified on her own behalf.

{¶ 13} As described by Wolf, the intersection of West Alex Bell and McEwen Roads is a four-way intersection controlled by a stop light. Alex Bell Road runs roughly east-west through the intersection, McEwen Road runs south from the intersection, and Olde Sterling Way runs north from the intersection. At that stop light, McEwen has one lane of travel each way and a left-turn lane for northbound traffic to turn left onto Alex Bell Road. Alex Bell Road has a through lane for each direction (east and west) and a central left-turn lane; eastbound traffic would use the left-turn lane to turn left onto Olde Sterling Way, whereas westbound traffic would use the left-turn lane to turn left onto McEwen. Olde Sterling Way has two lanes (northbound and southbound) at the intersection.

{¶ 14} According to Crouch, at approximately 3:35 p.m. on February 13, 2016, she was driving eastbound on Alex Bell Road in a silver Yukon. Her three-year-old son was also in the vehicle. As she approached the intersection of Alex Bell and McEwen Roads,

she was driving in the same lane behind a blue Subaru; Crouch identified Harris as the driver of the blue vehicle.

**{¶ 15}** Crouch testified that Harris's vehicle began to turn right on McEwen. However, when the blue Subaru "had almost completed her turn onto McEwen" and Crouch proceeded to go through the green light to continue on Alex Bell, the blue vehicle "kind of made a U-turn back into [Crouch's] lane" and hit Crouch's Yukon. Crouch clarified that Harris had "practically completed her turn onto McEwen" and was no longer in Crouch's lane when Crouch started going through the intersection. Harris's car was going "roughly northeast" on McEwen when the vehicles collided. Crouch stated that the blue vehicle's front driver's side "t-boned" the passenger-side front corner of the Yukon. The vehicles ended up at the curb of the right lane of Alex Bell on the east side of the Alex Bell/ McEwen intersection. Flames were coming out of the front of her Yukon.

**{¶ 16}** Deputy Wolf responded to the collision. When he arrived, another officer, Sergeant Whitaker, was already on scene, and the vehicles' occupants were providing witness statements. Wolf extinguished the Yukon's flames with a fire extinguisher. Wolf noticed that the front driver's side of the blue Subaru was damaged from the crash.

**{¶ 17}** After talking to the occupants of the vehicles, Wolf "examined the roadway for any indicators, physical evidence from the crash." He observed that all of the debris was in the eastbound lanes, and no debris was located on the north side (i.e., westbound lanes) of the intersection. He saw damage to the front driver's side of the Subaru and the front passenger side of the Yukon.

**{¶ 18}** Wolf further testified, without objection[2]:

---

[2] Harris asked Wolf on cross-examination whether the sergeant's oral report would be

I asked Sergeant Whitaker if there had been any witnesses that had stopped. She advised that there had been but when we diverted our attention to put out the fire they had already left. She had spoken to them and they had confirmed [Crouch's] story as to the * * * blue Subaru turning and turning back into the lane of travel.

The officers did not obtain witness statements from these witnesses, because they had already left. The only witness statements were from the occupants of the vehicles.[3]

{¶ 19} As a result of the investigation, Deputy Wolf issued a citation for a marked lanes violation to Harris. Wolf testified that he did so, because "she left the lanes of travel and then return[ed] to the lanes of travel. And when she did so she caused an accident." Wolf identified Harris as the individual he cited.

{¶ 20} Harris questioned Wolf during cross-examination about whether he had witnessed any damage to the rear of her vehicle. Wolf responded that he did not examine the back of Harris's vehicle, because the primary impact was to the front driver's side of her car. On redirect examination, Wolff testified that damage to the back of Harris's vehicle from the collision was "not likely" due to the angle of impact ("almost a 45 degree angle").

{¶ 21} Testifying on her own behalf, Harris stated that she was heading down Alex Bell Road and was in the left lane, with her left turn signal on, to turn into the neighborhood

---

considered hearsay; he responded, "No." However, she did not ask the trial court to exclude Wolf's testimony regarding Whitaker's statements.

[3] Attached as an appendix to Harris's appellate brief is a Traffic Crash Report and the occupants' witness statements. These documents were not presented at trial, and the State has moved to strike the appendix. The State's motion is granted. Accordingly, we will not consider these documents in ruling on Harris's assignments of error.

off Olde Sterling Way. Harris stated that, as she was completing her turn, the Yukon "came around me" on the left and collided with the rear driver's side of her Subaru. Harris denied that she was turning right and then decided to turn left. She stated that she "knew exactly where I was headed and my left turn signal was on. And I was in the left lane making that turn." Harris stated that the two vehicles were in the middle of the intersection, not within the lanes, when the collision occurred. On cross-examination, Harris stated that the impact to the rear of the vehicle caused her Subaru to rotate, and the front of her car came into contact with the side of Crouch's vehicle.

{¶ 22} Harris showed the trial court several photographs (apparently from her cell phone) that she had taken at the scene. The record has been supplemented with three photographs that were most likely viewed at trial. One photograph shows the two vehicles at rest following the collision. The two additional photographs show damage to the rear driver's side of the Subaru.

{¶ 23} Harris stated on cross-examination that she had never been to the Olde Sterling Way neighborhood before, but her passenger (who was not called to testify) had been there and was directing her. She stated that, prior to the intersection, her passenger had instructed her to turn left.

{¶ 24} The trial court orally found Harris guilty of the marked lanes violation. The court stated, "Based upon the evidence, the physical evidence in particular and the testimony presented as to the investigation of the accident, the Court does find that the prosecution has proven its case beyond a reasonable doubt and will enter a finding of guilty. Again I am relying upon the physical evidence, the testimony of the investigation as to points of impact[,] [w]here the debris was found and where the vehicles wound up

after the collision."

**{¶ 25}** Reviewing the evidence in the light most favorable to the State, we find sufficient evidence to prove that Harris committed a marked lanes violation. Deputy Wolf described the Alex Bell and McEwen Roads intersection and how the lanes approaching that intersection were marked. Crouch's testimony, if believed, established that Harris began to turn right from eastbound Alex Bell Road onto southbound McEwen Road, that Crouch proceeded through the intersection in the eastbound through lane, that Harris turned around on McEwen, and that Harris hit the right passenger side of Crouch's Yukon. In addition, Deputy Wolf testified that the debris was located in the eastbound lanes and that no debris was located on the north side (i.e., westbound lanes) of the intersection. Wolf observed damage to the front driver's side of the Subaru and the front passenger side of the Yukon. Harris's conviction for a marked lanes violation was based on sufficient evidence.

**{¶ 26}** Upon review of all the evidence submitted at trial, we cannot conclude that the trial court "lost its way" when it found Harris guilty of the marked lanes violation. Harris testified that she was in the left-turn lane and that her vehicle was rear-ended by Crouch's vehicle as Harris was making a left-hand turn onto Olde Sterling Way. Harris had photographs of damage to the rear driver's side of her vehicle, but Deputy Wolf's observations were consistent with Crouch's version of events. The credibility of the witnesses and the weight to be given to their testimony were matters for the judge, as the trier of fact, to determine. Although there was conflicting evidence regarding how the collision occurred, we cannot conclude that Harris's conviction was against the manifest weight of the evidence.

**{¶ 27}** Harris's third assignment of error is overruled.

### III. Accident Reconstruction Testimony

**{¶ 28}** In her second assignment of error, Harris claims that the trial court committed plain error in allowing Deputy Wolf, the deputy who responded to the accident, to testify as an accident reconstruction expert. Harris did not object to Wolf's testimony during the trial.

**{¶ 29}** In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 22; Crim.R. 52(B). The Ohio Supreme Court has stated that, even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23. Rather, plain error should be noticed "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice." (Emphasis added in *Rogers*.) *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶ 30}** A police officer does not need to be an expert to testify about the collection of data and recording of information at an accident scene, but accident reconstruction "involves the use of scientific methodology to draw inferences from investigative data." *State v. Mobley*, 2d Dist. Montgomery No. 26858, 2016-Ohio-4579, ¶ 31, quoting *State v. Brady*, 7th Dist. Mahoning No. 13 MA 88, 2014-Ohio-5721, ¶ 43. Consequently, a police officer who testifies about the cause of an accident must have knowledge concerning or experience in determining the cause of accidents. *Id.*

**{¶ 31}** Here, Deputy Wolf testified about his observations at the scene of the collision. He indicated where he had observed debris, the placement of the vehicles in the roadway, and the location of the damage that he had observed to the vehicles. Wolf's testimony related to the collection of data at the accident scene, not accident reconstruction testimony, and he did not offer an expert opinion as to the cause of the accident. We find no error, let alone plain error, in the admission of Deputy Wolf's testimony, as a police officer, of his observations at the accident site.

**{¶ 32}** Harris's second assignment of error is overruled.

### IV. Conclusion

**{¶ 33}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Nolan C. Thomas
Daniel J. O'Brien
Hon. Frederick W. Dressel