[Cite as *State v. Logsdon*, 2026-Ohio-1789.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. Nos. 30502; 30507 |
| Appellee | : | |
| | : | Trial Court Case Nos. 2024-CRB-209; |
| v. | : | 2024-TRD-326 |
| | : | |
| JERRY R. LOGSDON | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 15, 2026, the judgment of the trial court in Case No. 2024-CRB-209 is affirmed. The judgment of the trial court in Case No. 2024-TRD-326 is affirmed as to the failure to control offense and affirmed as modified as to the speeding offense.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,


_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

JOHN A. FISCHER, Attorney for Appellant
STEPHANIE L. COOK, Attorney for Appellee

EPLEY, J.

{¶ 1} In this consolidated appeal, Jerry R. Logsdon appeals from his convictions in the Dayton Municipal Court following a bench trial on vehicular homicide, vehicular manslaughter, speeding, and failure to control. He claims that his convictions were based on insufficient evidence and against the manifest weight of the evidence and that the trial court erred in convicting him of speeding as a misdemeanor of the fourth degree. Logsdon also challenges the admission of certain evidence at trial.

{¶ 2} For the following reasons, the trial court's judgment in Case No. 2024-CRB-209 is affirmed. The judgment in Case No. 2024-TRD-326 is affirmed as to failure to control and affirmed as modified as to speeding.

**I. Facts and Procedural History**

{¶ 3} According to the State's evidence at trial, at approximately 8:40 a.m. on December 28, 2022, David Geis turned left from Park Drive into the left northbound lane of Wayne Avenue in Dayton. Before doing so, Geis saw a blue Chevy Envoy SUV near the intersection of Wayne Avenue and Wyoming Street to his right; no cars were coming from his left. The temperature was cold and the road was icy, but Geis believed he had plenty of time to make the turn. While turning, Geis's tires "may have slipped a little bit," but he did not fishtail or swerve.

{¶ 4} Logsdon, who was later determined to be the driver of the Envoy, caught up to Geis around Oak Street and briefly matched Geis's speed while "riding his bumper."

2

Logsdon passed Geis in the right lane and then moved back into the left lane in front of him. Geis slowed down, and he saw the Envoy start "slipping and sliding back and forth," move into the right lane, hop the curb, and hit a utility pole at the southeast corner of Wayne Avenue and Clover Street. Jennifer Johnson, who was standing near the pole, was also struck by the Envoy and propelled into the middle of Clover Street. Several witnesses, including Geis, called 911, and a nurse bystander began CPR on Johnson. After the crash, Logsdon exited his vehicle and lay down on the ground next to it.

{¶ 5} Police officers and fire department personnel quickly responded to the scene. Logsdon was taken to the hospital, where he underwent surgery for serious injuries. Johnson was deceased when the paramedics arrived. A deputy coroner conducted Johnson's autopsy and determined that she had died from multiple blunt force injuries consistent with being struck by a vehicle.

{¶ 6} An investigation was conducted by the Dayton Police Department's Traffic Services Unit, which investigates crashes that result in serious injuries or fatalities. On January 3, 2023, Detective Christopher Jordan spoke with Logsdon at the hospital. Logsdon attributed the crash to someone turning onto Wayne Avenue and cutting him off. Detective Jordan later retrieved the crash data recorder from the Envoy and provided it to Officer Timothy Rizer, another member of the unit, who downloaded the information using the Bosch Crash Data Retrieval ("CDR") software, which generated a report. The Bosch CDR report indicated that Logsdon had been speeding within seconds of the crash, with the fastest speed being 53 mph (three seconds before) and the slowest being 42 mph (one second before). Jordan took measurements of the crashed Envoy and, using that data, calculated Logsdon's estimated speed at impact to have been approximately 41 mph.

3

{¶ 7} On January 23, 2023, Logsdon was charged by complaint with vehicular homicide and vehicular manslaughter in Case No. 2024-CRB-209. The same day, he was ticketed for speeding (53 mph in a 35 mph zone and unsafe for conditions) and failure to control in Case No. 2024-TRD-326. Logsdon pleaded not guilty to the charges. Logsdon subsequently moved to suppress the statements he made to Detective Jordan at the hospital and the evidence obtained from search warrants for his car and medical records. After a hearing, the trial court sustained the motion to suppress as to his statements, but we reversed the trial court's judgment on appeal and remanded for further proceedings. *See State v. Logsdon*, 2025-Ohio-298 (2d Dist.).

{¶ 8} Ultimately, the matter proceeded to a bench trial on all charges on March 27, 2025. The State presented the testimony of Nicholas Snyder (an eyewitness), Geis, two members of the Dayton Fire Department, Officer Rizer, Detective Jordan, and the deputy coroner who conducted Johnson's autopsy. Numerous exhibits were offered into evidence, including the 911 calls, photographs of the scene, the coroner's report and photographs, a video recording of Logsdon's interview with Detective Jordan, witness statements, and documents related to the crash investigation and the officers' training. Logsdon did not present any evidence in his defense. At the conclusion of the trial, the trial court found Logsdon guilty of each offense and ordered a presentence investigation.

{¶ 9} At sentencing, the trial court merged the vehicular manslaughter charge with the vehicular homicide charge, and it imposed 180 days in jail with 90 days suspended, plus three years of community control, for vehicular homicide. Logsdon was ordered to pay restitution of $5,533.81, a fine of $250, and court costs. The court also suspended his driver's license for three years. In the traffic case, the trial court found that the speeding offense was a fourth-degree misdemeanor, and it sentenced Logsdon to 30 days in jail. The

4

court suspended the fine for failure to control, and it waived court costs and the public defender fee for the traffic case. Logsdon sought a stay of his sentence, both in the trial court and this appellate court; both requests were denied.

{¶ 10} Logsdon appeals from the trial court's judgments, raising two assignments of error.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 11} In his first assignment of error, Logsdon claims that his convictions were based on insufficient evidence and against the manifest weight of the evidence. He asserts that the State failed to prove that his speed was unreasonable or improper, that he was driving above the speed limit, or that he failed to maintain control of his vehicle.

{¶ 12} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 1997-Ohio-372, ¶ 51. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id*.

{¶ 13} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in

resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 14} As an initial matter, we note that much of Logsdon's argument relates to the admission of certain evidence at trial. Specifically, he asserts that the content of the Bosch CDR report, as discussed by Officer Rizer, was inadmissible hearsay, and that Detective Jordan should not have been permitted to testify about his accident reconstruction (speed calculation) because he was not certified as an expert. Much of the State's responsive brief is devoted to addressing the evidentiary questions.

{¶ 15} When reviewing claims based on the sufficiency or manifest weight of the evidence, we are required to consider all the evidence admitted at trial, regardless of whether it was admitted erroneously. *See, e.g.*, *State v. Fleming*, 2022-Ohio-1876, ¶ 27 (2d Dist.), citing, *e.g.*, *State v. Brewer*, 2009-Ohio-593. Accordingly, we must consider the disputed evidence in conducting our sufficiency and manifest weight analyses. However, because both parties have addressed the admissibility of the CDR report and crash reconstruction testimony, we also consider those issues.

**A. Sufficiency and Manifest Weight**

{¶ 16} In Case No. 2024-CRB-209, Logsdon was found guilty of (1) vehicular homicide in violation of R.C. 2903.06(A)(3) and (2) vehicular manslaughter in violation of R.C. 2903.06(A)(4). Both offenses required proof that Logsdon had caused the death of another while operating a motor vehicle. For vehicular homicide, the State also had to prove that Logsdon had operated the vehicle negligently. The State elected to proceed on the

6

theory that Logsdon had driven negligently by speeding at a rate that was unsafe for the conditions. The vehicular manslaughter charge required proof that the death was the proximate result of Logsdon committing a minor misdemeanor traffic offense. The State alleged that Johnson's death was a proximate result of Logsdon's failure to control offense.

{¶ 17} In the traffic case, the trial court convicted Logsdon of speeding and failure to control. With respect to the speeding, the State indicated during its opening statement that it was proceeding under R.C. 4511.21(A), which states that "[n]o person shall operate a motor vehicle . . . at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions." Although the trial court's judgment entry cites a different portion of R.C. 4511.21, the trial transcript reflects that the court found Logsdon guilty of violating R.C. 4211.21(A). Accordingly, our focus is on whether the State presented legally sufficient evidence on that charge. *See State v. Hill*, 2015-Ohio-5166, ¶ 47 (2d Dist.).

{¶ 18} On appeal, Logsdon does not contest that he hit and killed Johnson with his vehicle. Instead, he argues that the State failed to prove that he was speeding and that he failed to maintain reasonable control of his vehicle. Upon considering all the evidence at trial and reviewing it in the light most favorable to the State, there was sufficient evidence to support the trial court's guilty findings.

{¶ 19} Geis and Detective Jordan testified regarding the conditions of the roadways on the morning of December 28, 2022. According to Detective Jordan, the "road was wet and icy in areas. The sidewalks and curbs were covered in snow and slush. It was very white and slippery." Geis also described the roads as icy, and he indicated that he had debated whether to go to a medical appointment that morning. Geis stated that his tires might have slipped a little when he turned onto Wayne Avenue.

7

{¶ 20} The State presented substantial evidence that Logsdon was driving at a speed that was unreasonable for those conditions and then failed to control his vehicle, causing Johnson's death. Geis testified that he believed he had enough time to safely pull onto Wayne Avenue, considering Logsdon's location at the intersection of Wayne and Wyoming. He described how Logsdon caught up to him quickly, briefly drove closely behind him, "whipped around him," "flew past" him, and then returned to the left lane. Geis testified that it had sounded as though Logsdon had "floored the engine" when he passed. Geis then saw the Envoy slide, hop the curb, and strike Johnson. Nicholas Snyder was at a coffee shop on the southwest corner of the Wayne and Clover intersection, and he had a clear view of the road and crosswalk when the crash occurred. Snyder also described the collision, stating that a vehicle "came into view very quickly at a rapid pace[,] striking the pole and the victim."

{¶ 21} Geis and Detective Jordan each testified that the speed limit on Wayne Avenue was 35 mph. The information obtained from the crash data recorder in Logsdon's vehicle indicated that five seconds before the airbag deployed, Logsdon was driving in the following manner:

| Seconds Before | Speed | Pedal Used |
| --- | --- | --- |
| Five | 47 mph | Accelerator |
| Four | 50 mph | Accelerator |
| Three | 53 mph | None |
| Two | 48 mph | Brake |
| One | 42 mph | Brake |

Using his measurements of the Envoy from after the crash, Detective Jordan calculated Logsdon's estimated speed at impact. The crush data for the Envoy's bumper resulted in an estimated speed of 40.66 mph, and the crush data for the hood resulted in an estimated speed of 41.30 mph.

{¶ 22} The State's evidence, if believed, established that Logsdon was driving above the speed limit on Wayne Avenue, that the speed was unreasonable given the icy conditions, that he lost control of his vehicle, and that his negligence and failure to control resulted in his striking Johnson, causing her death. Logsdon's convictions were based on sufficient evidence.

{¶ 23} Through cross-examination, defense counsel attempted to establish that Logsdon had not been speeding, that he had slid on black ice, and that the collision was occasioned by Geis cutting him off. Geis acknowledged that he had turned "relatively slowly" onto Wayne Avenue and was traveling at approximately 25 mph (10 mph under the posted speed limit) at one point. He further acknowledged that his written statement had not included that the Envoy's driver had ridden his rear bumper or revved his engine. On cross-examination, Geis denied saying that he had said that he had heard the Envoy's engine. Defense counsel also raised questions about the accuracy of the speed data. Notably, the photos of the Envoy's speedometer following the crash showed a speed of 17 mph. However, the car was stationary when that photo was taken, and there was testimony that other gauges were also broken.

{¶ 24} It was the province of the trial court, as the trier of fact, to assess the witnesses' credibility and determine whether the State had proven beyond a reasonable doubt that Logsdon had committed the charged offenses. In reaching its verdict, the court was free to believe all, part, or none of each witness's testimony. *State v. Peterson*, 2021-Ohio-3947, ¶ 27 (2d Dist.). On this record, we cannot conclude that the trial court lost its way when it ostensibly credited the State's witnesses and found Logsdon guilty of the charged offenses. Logsdon's convictions were not against the manifest weight of the evidence.

**B. Evidentiary Matters**

{¶ 25} Logsdon directs much of his argument to the trial court's admission of evidence regarding his speed through the testimony of Detective Jordan and Officer Rizer. He claims that the testimony of Officer Rizer regarding the Bosch CDR report was inadmissible hearsay and that Detective Jordan's testimony was improper because he was not certified as an expert in crash reconstruction.

{¶ 26} "A trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion." *State v. Hunt*, 2019-Ohio-2352, ¶ 27 (2d Dist.). A trial court abuses its discretion if it makes an unreasonable, unconscionable, or arbitrary decision. *State v. Sutherland*, 2021-Ohio-2433, ¶ 23 (2d Dist.).

**1. Bosch CDR Report**

{¶ 27} First, Logsdon claims that Officer Rizer's testimony regarding the content of the Bosch CDR report and the report itself constituted inadmissible hearsay.

{¶ 28} Under Evid.R. 801(C), "hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In general, hearsay is not admissible. Evid.R. 802. The term "statement" means "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A). A "declarant" is "a person who makes a statement." Evid.R. 801(B).

{¶ 29} The Eighth and Twelfth Districts have rejected claims that a crash data report constitutes inadmissible hearsay. *See State v. Thompson*, 2021-Ohio-376, ¶ 36-42 (8th Dist.); *State v. Cast*, 2022-Ohio-3967, ¶ 29-32 (12th Dist.) (following *Thompson*). After recognizing that crash data reports are computer-generated data compilations, the Eighth

District concluded that the report was not hearsay because the report "does not consist of 'statements' made by a 'person' as contemplated by the Rules of Evidence." *Thompson* at ¶ 39. The *Thompson* court likened crash data reports to the computer-aided detection mammography in *Gray v. Fairview Gen. Hosp*., 2004-Ohio-1244 (8th Dist.), and the information from the Google Maps application on a witness's phone in *Dickerson v. Miller's TLC, Inc*., 2012-Ohio-2493, ¶ 12-13 (8th Dist.), both of which involved information generated by the computer application. The Eighth District also cited numerous cases from other jurisdictions, which held that the output of a computer's internal operations were not hearsay because the report did not represent statements placed into the computer by out-of-court declarants. *See Thompson* at ¶ 41.

{¶ 30} Logsdon asks us not to follow *Thompson*. However, we agree with the Eighth District's reasoning, which is consistent with the plain language of Evid.R. 801. We therefore similarly hold that reports of machine-generated data are not statements by a declarant and thus not hearsay. Accordingly, the Bosch CDR report in this case did not constitute inadmissible hearsay, nor did Officer Rizer's testimony regarding the report.

{¶ 31} To the extent that Logsdon expresses concern about the reliability of the data contained in the Bosch CDR report, Officer Rizer testified about his training and experience in using the application and hardware to download the information from the Envoy's crash data recorder, and he indicated that he downloaded the CDR report consistently with his training. Although there was testimony that the gauges (speedometer, temperature, fuel) on the dashboard showed inaccurate information, there was no suggestion that the crash data recorder had been damaged. Detective Jordan also checked for recalls regarding the Envoy and found none. The trial court did not abuse its discretion in admitting the Bosch CDR report into evidence.

### 2. Detective Jordan's Calculation of Estimated Speed

{¶ 32} Next, Logsdon claims that Detective Jordan's testimony regarding his calculations of the Envoy's estimated speed was improper expert testimony. Logsdon did not object to Detective Jordan's testimony regarding his speed calculations. Consequently, he has forfeited all but plain error. To constitute plain error, the error must be an obvious defect in the trial proceedings and must have affected Logsdon's substantial rights. *State v. Norris*, 2015-Ohio-624, ¶ 22 (2d Dist.); Crim.R. 52(B). Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. Plain error should be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. at paragraph three of the syllabus.

{¶ 33} The Ohio Rules of Evidence delineate two forms of opinion testimony: lay and expert. "The distinction between lay and expert witness opinion testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *State v. Wells*, 2022-Ohio-30, ¶ 17 (2d Dist.), quoting 28 Ohio Jur.3d, Criminal Law: Procedure, § 1641; *see State v. McKee*, 91 Ohio St.3d 292, 297, fn. 2 (2001).

{¶ 34} A lay witness may testify about opinions or inferences that are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. In other words, a witness must have first-hand knowledge of the subject of his or her testimony and the opinion must be one that a rational person would form based on the observed facts. It also must help the trier of fact in understanding the testimony of the witness or determining a fact in issue. *Wells* at ¶ 18; *State v. Bolling*, 2005-Ohio-2509, ¶ 12 (2d Dist.).

12

{¶ 35} "A police officer does not need to be an expert to testify about the collection of data and recording of information at an accident scene." *State v. Harris*, 2017-Ohio-4095, ¶ 30 (2d Dist.). In contrast, accident reconstruction "involves the use of scientific methodology to draw inferences from investigative data." *State v. Mobley*, 2016-Ohio-4579, ¶ 31 (2d Dist.), quoting *State v. Brady*, 2014-Ohio-5721, ¶ 43 (7th Dist.). A police officer who testifies about the cause of an accident must have knowledge concerning or experience in determining the cause of accidents. *Harris* at ¶ 30.

{¶ 36} Detective Jordan testified that he was required to complete traffic crash reconstruction training to be part of the Traffic Services Unit. The training consisted of four levels, each of which addressed aspects of speed calculation; the fourth level discussed speed calculation based on damage and other factors. The State presented Jordan's certificates of completion for each level, as well as his curriculum vitae. Although Jordan was fairly new to the unit when Logsdon's crash occurred, by the time of trial he had been involved in 62 serious-injury crash investigations, 19 of which involved fatalities, and had been lead investigator for approximately 50 of them.

{¶ 37} Detective Jordan responded to the scene and took photographs. After the Envoy was towed, Jordan took measurements of the vehicle. Jordan's speed calculations were performed using the data he had gathered during the vehicle inspection, as well as measurements for Envoys from the National Highway Traffic Safety Administration website. He stated that he had used the Vomhof standard crush narrow object formula, an equation on which he had received training, to calculate the Envoy's speed upon impact with the pole, and he described the process for employing the formula. The measurements, Vomhof formula, and application of the formula were admitted as State's Exhibits 17-19.

**{¶ 38}** Assuming, for the sake of argument, that an expert was required to testify about the calculated speed estimates, we find no plain error in this case. Although the State did not ask for Detective Jordan to be recognized as an expert at trial, he had the qualifications to be an expert in crash reconstruction had Logsdon raised an objection. Moreover, Jordan's estimates of the Envoy's speed at impact were consistent with Officer Rizer's prior testimony regarding the Envoy's speed as registered by the Envoy's crash data recorder. Geis and Snyder had also perceived that the Envoy had traveled at a rapid speed. On this record, we cannot conclude that the outcome of Logsdon's trial clearly would have been different.

**{¶ 39}** Logsdon's first assignment of error is overruled.

### III. Speeding as a Fourth-Degree Misdemeanor

**{¶ 40}** In his second assignment of error, Logsdon claims that the trial court erred when it convicted him of speeding as a fourth-degree misdemeanor. Logsdon asserts that the State had charged him with violating R.C. 4511.21(A), and he asks that we modify his conviction to a minor misdemeanor. The State responds that Logsdon's argument is moot because he has served his 30-day jail sentence for speeding.

**{¶ 41}** Before considering Logsdon's argument, we must address whether this issue is moot. "The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 2018-Ohio-24, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970); *State v. Smith*, 2019-Ohio-3592, ¶ 8 (2d Dist.). "Issues are moot when they lack practical significance and, instead, present academic or hypothetical questions." *Dibert v. Carpenter*, 2018-Ohio-1054, ¶ 30 (2d Dist.), citing *State ex rel. Ford v. Ruehlman,* 2016-Ohio-3529, ¶ 55. Appellate courts lack jurisdiction to consider the merits of a moot appeal. *See State v. Berndt*, 29 Ohio St.3d 3, 4 (1987); *Smith* at ¶ 9.

**{¶ 42}** Appeals of misdemeanor convictions are considered moot if the defendant has voluntarily satisfied his or her sentence, unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction. *State v. Wilson*, 41 Ohio St.2d 236 (1975), syllabus; *Urbana v. Boystel*, 2021-Ohio-2529, ¶ 9 (2d Dist.). A defendant can show that he or she did not serve a sentence voluntarily if the defendant sought a stay of the sentence to allow for the appeal. *Smith* at ¶ 10, citing *Cleveland Hts. v. Lewis*, 2011-Ohio-2673, ¶ 23. A sentence is also considered involuntarily served when it is entirely served prior to conviction. *Id*.

**{¶ 43}** "A collateral disability is an adverse legal consequence of a conviction or judgment that survives despite the court's sentence having been satisfied or served." *In re S.J.K.*, 2007-Ohio-2621, ¶ 10. We have recognized that the statutorily mandated assessment of points against the defendant's driving record constitutes a collateral disability. *E.g.*, *State v. Bittles*, 2018-Ohio-4228, ¶ 5 (2d Dist.).

**{¶ 44}** In this case, Logsdon sought a stay of his sentence, both in the trial court and this court. Accordingly, we cannot say that he has voluntarily served his sentence. In addition, he has challenged his conviction for speeding, not merely his jail sentence. We thus conclude that Logsdon's appeal from his speeding conviction is not moot.

**{¶ 45}** The penalties for speeding are set forth in R.C. 4511.21(P). Under R.C. 4511.21(P)(1)(a), a violation of R.C. 4511.21 is generally a minor misdemeanor. Of relevance here, the offense is elevated to a fourth-degree misdemeanor if "the offender operated a motor vehicle faster than thirty-five miles an hour in a business district of a municipal corporation." R.C. 4511.21(P)(2).

15

**{¶ 46}** The ticket issued by Detective Jordan cited Logsdon with speeding based on unsafe for conditions and driving over the speed limit (53 mph in 35 mph zone). In the portion of the ticket identifying the area of the offense, Jordan selected the box for "business." However, the State presented no evidence that the relevant portion of Wayne Avenue was in a business district, nor did it assert in the trial court that R.C. 4511.21(P)(2) applied.

**{¶ 47}** Business districts within municipal corporations are defined by R.C. 4511.01(NN) and typically have a speed limit of 25 mph. *See* R.C. 4511.21(B)(2). The State's evidence established that Wayne Avenue had a speed limit of 35 mph, the prima facie maximum speed for "all state routes or through highways within municipal corporations outside business districts." R.C. 4511.21(B)(3); *see also* R.C. 4511.65(B) (defining when a street is a "through highway"). Although there was some testimony referencing a few businesses along Wayne Avenue, there was no testimony directed to whether Wayne Avenue was in a business district as defined by R.C. 4511.01(NN).

**{¶ 48}** Moreover, although the State presented evidence of Logsdon's speed, it repeatedly stated at trial that it was pursuing only the charge of speeding in a manner unsafe for conditions in violation of R.C. 4511.21(A), a minor misdemeanor. *See, e.g*., Tr. 254, 261. Consistent with that representation, the trial court found Logsdon guilty of violating R.C. 4511.21(A). At the beginning of the sentencing hearing, the court reiterated that Logsdon had been convicted of speeding as a minor misdemeanor. We therefore agree with Logsdon that the record does not support his conviction for speeding as a fourth-degree misdemeanor.

**{¶ 49}** In its judgment entry, the trial court convicted Logsdon of violating R.C. 4511.21(B)(5). R.C. 4511.21(B) sets forth maximum speeds that are prima facie lawful for various types of roadways, and R.C. 4511.21(C) states that it is prima facie unlawful to

16

exceed any of those limits. R.C. 4511.21(B)(5) sets a maximum prima facie lawful speed of 55 mph for certain highways outside of municipal corporations. There is no question that Logsdon was not charged with exceeding the speed limit set forth in R.C. 4511.21(B)(5).

{¶ 50} "In general, absent a negotiated plea agreement or evidence of a lesser included offense, a defendant cannot be convicted of an offense for which he or she has not been charged. If a judgment entry misidentifies the offense due to a clerical error, that error may be corrected pursuant to Crim.R. 36." *Hill* at ¶ 49. In this case, it is apparent that the reference to R.C. 4511.21(B)(5) is a typographical error. Although it is not entirely clear what statute the trial court intended to cite, we find it appropriate to simply modify Logsdon's speeding conviction to a minor misdemeanor under R.C. 4511.21(A).

{¶ 51} Logsdon's second assignment of error is sustained.

### IV. Conclusion

{¶ 52} The trial court's judgment in Case No. 2024-CRB-209 is affirmed. The judgment in Case No. 2024-TRD-326 is affirmed as to the failure to control offense and affirmed as modified as to the speeding offense.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.

17